**GOULD, INC., Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

No. 90–5062.

United States Court of Appeals, Federal Circuit.

June 7, 1991.

Michael T. Janik, McKenna, Conner & Cuneo, Washington, D.C., argued, for plaintiff-appellant. With him on the brief was Patrick K. O'Keefe. Also on the brief was James W. Midgley, Vice President, General Counsel and Corporate Secretary,

NavCom Defense Electronics, Inc., El Monte, Cal., of counsel.

Elizabeth S. Woodruff, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for defendant-appellee. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Stephen J. McHale, Asst. Director and Mary Mitchelsen. Also on the brief was Andrei Kushnir, Associate Counsel, Office of the General Counsel, Dept. of the Navy, Washington, D.C., of counsel.

Before NEWMAN, ARCHER and PLAGER, Circuit Judges.

ARCHER, Circuit Judge.

Gould, Inc. (Gould) appeals the judgment of the United States Claims Court, *Gould, Inc. v. United States*, 19 Cl.Ct. 257 (1990), dismissing its complaint against the United States for failure to state a claim upon which relief can be granted. We vacate and remand.

I

After a period of soliciting proposals in October 1983, the Naval Electronics Systems Command (Navy) awarded Gould a five-year contract, No. N00039–84–C–0168, to build Bancroft-type tactical radios at a fixed price of $44,778,779.00. The Navy's request for proposals (RFP) contained detailed performance specifications. Included with the RFP were design specifications and drawings for a prior Bancroft radio developed for the Army, headed "for informational purposes only." Gould initially attempted to redesign the Army Bancroft radio to satisfy the Navy's different performance requirements, but was unable to do so. Gould then performed additional design work, which it contends had not been contemplated or reflected in its bid, in an effort to meet the Navy's specifications. During contract performance, the Navy provided Gould with data that showed the many differences between the Navy's requirements and the Army's Bancroft radio design. According to Gould, the data revealed that simply upgrading the Army's radio would not meet the performance requirements of the Navy contract and that a complete redesign of the Army model would be necessary. Gould alleges that it had requested this information at a pre-award conference.

On December 11, 1986, Gould submitted a certified claim to the contracting officer seeking "equitable reformation and upward adjustment in the price of [the] contract." The claim specifically requested that the Navy compensate Gould for:

> costs to achieve a "stable design," was [sic] well as its unanticipated, increased recurring costs resulting from achieving a much more complex "stable design" than envisioned. In short, Gould should be entitled to its total overrun.

It also stated that Gould is "entitled to equitable relief on other, independent grounds based on [the government's] withholding of information and/or mutual mistake." The claim concluded with a pricing section which requested money damages in the amount of $57,545,719 for "excess development costs plus increased recurring costs." The requested relief sought in the claim was contract reformation for the amount claimed.

In support of the requested relief, the claim asserted, first, that the Navy violated 10 U.S.C. § 2306(h)(1) by failing to supply a stable design for the multi-year procurement, thus making the contract illegal from its inception; second, that prior to the award of the contract the Navy withheld documents that would have permitted bidders to estimate "the degree of design effort and risk involved in meeting the Navy's performance specification;" and, third, that there was a mutual mistake by Gould and the Navy regarding a basic assumption of the contract because both believed "that only minimal design and development effort would be required."

The contract contained the standard default clause, *see* DAR § 7.103.11 (1969), allowing the United States to terminate the contract if Gould failed to meet delivery schedules. Gould was unable to deliver a device for testing within the contract deadline. After negotiations, Gould and the Navy, on December 9, 1987, entered into a

settlement by executing a bilateral modification to the contract (settlement agreement). Under this settlement agreement, the Navy terminated the contract for default but waived all rights to demand monetary damages from Gould. Gould, in turn, released the Navy from any and all claims under the contract, except for its December 11, 1986 claim, which was still pending when the settlement agreement was signed.

The relevant provisions of the settlement agreement are as follows:

WHEREAS, Gould has submitted a certified claim (the "claim"), under transmittal letter dated 11 December 1986, in the amount of $57,545,719.00, which claim has been the subject of negotiation between Gould and the Government; and WHEREAS, the claim alleges that Gould is entitled to equitable reformation of the contract for amounts in excess of the contract price based upon the theories of contract invalidity, or Government withholding of necessary information, or mutual mistake;

NOW, THEREFORE, the parties hereto do mutually agree as follows:

. . . .

VIII. Within ten days after the date of this agreement, the Government intends to issue an appealable final decision of the contracting officer in response to Gould's claim dated 11 December 1986. *The Government reserves all defenses, and Gould reserves all affirmative arguments, that would otherwise be available to each under the claim.*

. . . .

X. ... Gould, for itself, its successors and assignees, hereby releases and forever discharges the Government, its officers, agents, and employees, from any and all claims (*except with respect to the grounds set forth in Gould's 11 December 1986 claim*).... This agreement is intended to be a complete and final adjustment of this Contract by reason of said events as of the effective date [of] this agreement *except with respect to*

*the grounds set forth in Gould's 11 December 1986 claim.*

(Emphasis added.)

On January 6, 1988, the contracting officer issued a decision denying Gould's claim in its entirety. Gould then filed suit in the Claims Court under the Contract Disputes Act of 1978, Pub.L. No. 95–563, 92 Stat. 2383 (codified at 41 U.S.C. §§ 601–613 (1988)), seeking "compensation damages in the amount of $36,000,000."[1]

In its opinion, the Claims Court assumed, without discussion or explanation, that the terms of the settlement agreement made contract reformation the *only* remedy that Gould was entitled to pursue. *Gould,* 19 Cl.Ct. at 263–64. As a result, the court's opinion is directed primarily to whether Gould was entitled to contract reformation under any of the three counts of the complaint which alleged (1) violation of 10 U.S.C. § 2306(h)(1) by the government, (2) withholding of information by the government, and (3) a mutual mistake. The court stated: "To dispose of defendant's motion [to dismiss], this court shall first determine whether reformation is appropriate relief for the particular claims asserted by plaintiff." *Id.* at 264. The Claims Court determined that each of the three counts in the complaint was legally insufficient to support contract reformation. The court also determined that Gould had not alleged, or would be unable to prove at trial, certain facts deemed essential to support the particular counts. The complaint was therefore dismissed under Rule 12(b)(4) of the Rules of the United States Claims Court (RUSCC) for failure to state a claim upon which relief can be granted.

## II

Whether the complaint was properly dismissed for failure to state a claim upon which relief can be granted and whether the underlying settlement agreement was correctly interpreted are both questions of law. Thus, our standard of review is *de novo. See, e.g., Bell v. Hood,* 327 U.S. 678,

---

1. The amount sought in the complaint was reduced from the amount set forth in the claim

because the contract was terminated before part of the costs set forth in the claim were incurred.

682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *Government Sys. Advisors, Inc. v. United States*, 847 F.2d 811, 812 n. 1 (Fed.Cir. 1988). Moreover, in reviewing a dismissal for failure to state a claim, we must assume all well-pled factual allegations are true and indulge in all reasonable inferences in favor of the nonmovant. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Chang v. United States*, 859 F.2d 893, 894 (Fed.Cir.1988); *Owen v. United States*, 851 F.2d 1404, 1407 (Fed.Cir.1988) (in banc).

Contract interpretation begins with the plain language of the agreement. *See Fort Vancouver Plywood Co. v. United States*, 860 F.2d 409, 413 (Fed.Cir.1988). "[P]rovisions of a contract must be so construed as to effectuate its spirit and purpose ... an interpretation which gives a reasonable meaning to all of its parts will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result." *Arizona v. United States*, 216 Ct.Cl. 221, 575 F.2d 855, 863 (1978).

██ Gould maintains on appeal that the Claims Court improperly dismissed its complaint and misinterpreted Gould's reserved rights under the settlement agreement. Gould contends that the language of the settlement agreement did not restrict the remedy it could seek but only precluded it from making a claim against the government on any ground other than the three grounds that were set forth in its claim.

At the outset, we note that the government argues that reformation is the only remedy that Gould reserved in the settlement agreement. The government then says that there is nothing to reform because the settlement agreement terminated the contract. This approach leads to the bizarre result that the very agreement in which Gould sought to reserve the right to pursue its claim also caused that reserved right to be worthless. The government's illogical contentions as to what the settlement agreement means are, to say the least, not overly persuasive.

The government's interpretation would restrict the plural reference to *"grounds* set forth in Gould's 11 December 1986 claim" (emphasis added) to the singular remedy of reformation. The agreement also specifically reserves to Gould "all affirmative arguments" under the claim, just as the government reserved "all defenses." This broad language would similarly be given narrow scope under the government's view of the settlement agreement.

The operative provisions of the agreement contain no reference to the remedy of reformation. Only the preamble mentions reformation. A WHEREAS clause describes what remedy Gould sought in the claim, but that clause goes on to state that the claim was "for amounts in excess of the contract price based upon the theories of contract invalidity, or Government withholding of necessary information, or mutual mistake." The word "grounds" in the operative provisions of the settlement agreement is not defined. We are convinced, however, that it is most reasonably interpreted as referring to the three theories described in the WHEREAS clause.

This interpretation is consistent with the common definition of "grounds." In Black's Law Dictionary, for example, "ground of action" is defined as:

> The basis of a suit; the foundation or fundamental state of facts on which an action rests (*e.g.* negligence; breach of contract)....

Black's Law Dictionary 704 (6th ed. 1990); *see also* Webster's II New Riverside University Dictionary 550 (1984) ("5. often *grounds.* The foundation for an argument, belief or action: BASIS.") (emphasis in original). The "foundation or fundamental state of facts" on which Gould's claim rested was each of the three theories for recovery described in the preamble of the settlement agreement, together with the facts set forth in the claim supporting those theories. The foundation of the claim was not the remedy sought.

Gould also reserved the right to put forth "all affirmative arguments" available to it under the claim. At the time the claim was filed with the contracting officer, the

contract was still operative. Reformation of the contract was then a viable method of obtaining an increase in the contract price to cover the additional costs claimed by Gould under the theories of recovery set forth in the claim. After the contract was terminated, as the government notes, reformation was not available. In the context of the termination and settlement of all other claims and liabilities, Gould's reservation of all affirmative arguments under the grounds set forth in the claim must be viewed as the reservation of the right to seek money damages. This is what Gould sought in its complaint filed in the Claims Court.

Because we are persuaded that the parties to the settlement agreement did not restrict, or intend to restrict, Gould to the remedy of contract reformation, we conclude that the Claims Court erred in assuming that reformation was Gould's only available remedy. Thus, its conclusion that adequate grounds for reformation of the contract had not been alleged was not a proper basis for dismissing the complaint.

### III

In addition to finding reformation an inappropriate remedy under any of the three counts of the complaint, the Claims Court determined that Gould had not alleged or could not prove the facts necessary to support any of the counts. Gould contends that the facts alleged in each count of the complaint were sufficient to state a cause of action and that the Claims Court did not accept its allegations as true and draw reasonable inferences in its favor. *See Owen*, 851 F.2d at 1407.

■ A. Gould's first count alleged that the contract was illegal because the Navy violated 10 U.S.C. § 2306 by failing to supply a stable design for a multi-year procurement contract. A court may grant equitable relief under an illegal contract if the government received a benefit from the contractor's performance. *United States v. Amdahl Corp.*, 786 F.2d 387, 393 (Fed. Cir.1986). The Claims Court, however, found that "[t]he Navy did not receive a benefit under the contract." *Gould*, 19 Cl.Ct. at 265. It further found that Gould could not claim that the illegality of the contract was unclear at the time of contracting. The court stated that "[p]laintiff knew, or should have known, that the contract did not contain a stable design." *Id.*

The Claims Court, in its first finding quoted above, merely inferred that the Navy received no benefit under the contract because Gould "did not deliver any conforming goods." *Id.* at 265. Apparently the Claims Court did not consider whether or not the extensive design work alleged in Gould's complaint and in the claim was sufficient to confer a benefit on the government. As to the Claims Court's second finding, the complaint and the claim on which it is based assert that Gould was unaware of the extensive design effort that would be required by the Navy's performance specifications. Moreover, the government has at all times argued that there *was* a stable design, which belies the court's finding that Gould knew or should have known that there *was not* a stable design.

The Claims Court construed the facts indicating benefit to the government and lack of awareness of the extent of the design effort against Gould. This was contrary to the standard for considering a motion for dismissal.

■ B. The second count of the complaint, alleging that the Navy withheld superior knowledge, was dismissed based on a finding that Gould failed to allege that the government's contract specifications were misleading. *Gould*, 19 Cl.Ct. at 267. Such an allegation was deemed necessary to a claim of superior knowledge. *See American Ship Bldg. Co. v. United States*, 228 Ct.Cl. 220, 654 F.2d 75, 78 (1981). Gould's complaint, however, stated:

The Navy withheld information which was critical to the Plaintiff's ability to effectively prepare a technical proposal conforming to the Navy performance specification. The information withheld, had it been released, would have alerted Plaintiff to deficiencies in the performance specification regarding how much

effort would be needed for design and development.

Plaintiff's Amended Complaint, page 5.

All that Rule 8(a)(2), RUSCC (comparable to Rule 8(a)(2), Fed.R.Civ.P.), requires "is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted); *see also Cornwall v. U.S. Constr. Mfg., Inc.*, 800 F.2d 250, 252, 231 USPQ 64, 66 (Fed. Cir.1986). We are convinced that the complaint is sufficient under notice pleading to support a claim of superior knowledge in the context of a motion to dismiss.

C. Finally, the Claims Court dismissed Gould's third count because, in its view, a requisite element of the claim of mutual mistake is that the contractor did not agree to bear the risk of a mistake. The court held that such a showing could not be made in a fixed-price contract because the contractor assumes the risk. Gould stated in its claim that it "cannot be held to have assumed the risk" of the substantially increased design work that neither it nor the government anticipated. In its complaint, Gould explicitly claimed that a mutual mistake was made and alleged the essential elements of mutual mistake. *Gould*, 19 Cl.Ct. at 269. Under the standard applica-

ble to a motion to dismiss, we must conclude that a claim of mutual mistake was adequately pled. Rule 8(a), RUSCC; *see Conley*, 355 U.S. at 47–48, 78 S.Ct. at 102–108; *Chang*, 859 F.2d at 894.

## IV

For the reasons set forth above, we hold that the settlement agreement was intended to permit Gould to pursue a cause of action for damages on the three grounds set forth in the claim submitted to the contracting officer; that its remedy was not limited to reformation of the contract; and that the Claims Court erroneously dismissed Gould's complaint for failure to state a claim on which relief can be granted.

Accordingly, the judgment of the Claims Court dismissing the complaint is vacated and the case is remanded for trial.

## COSTS

Costs are awarded to Gould.

**VACATED AND REMANDED**