48 F.3d 1166
 98 Ed. Law Rep. 23
 HIGHLAND FALLS-FORT MONTGOMERY CENTRAL SCHOOL DISTRICT,
Dorothy Bavaro, Nancy Brown, Margaret Disalvo,
Roxanne Donnery, Neal Kreitzer, Frank
Wisniewski, and Mary Whiffen,
Plaintiffs-Appellants,
v.
The UNITED STATES, Defendant-Appellee.
 No. 94-5087.
 United States Court of Appeals,
Federal Circuit.
 Feb. 15, 1995.
 
 Michael C. Eidens, Eidens & Dickson, Schenectady, NY, argued for plaintiffs-appellants. Also on the brief was Forrest B. Fordham, III, Butler, PA, of counsel.
 Joan Mary Bernott, Sp. Litigation Counsel, Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for defendant-appellee. With her on the brief were Frank W. Hunger, Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief was Miriam Haverstock Whitney, Office of the General Counsel, U.S. Dept. of Educ., Washington, DC, of counsel.
 Before RADER, Circuit Judge, SMITH, Senior Circuit Judge, and SCHALL, Circuit Judge.
 SCHALL, Circuit Judge.
 
 
 1
 Appellants are the Highland Falls-Fort Montgomery Central School District in the State of New York (Highland Falls) and seven individuals who are members of the Highland Falls Board of Education, residents of the school district, and payers of real property taxes. They appeal the January 14, 1994 judgment of the United States Court of Federal Claims dismissing their complaint pursuant to Court of Federal Claims Rule 12(b)(4) for failure to state a claim upon which relief could be granted. Appellants sought the payment of money which they alleged Highland Falls should have received from the government in fiscal years 1989 through 1993 pursuant to Section 2 of the Impact Aid Act, Pub.L. No. 81-874, 64 Stat. 1100 (1950) (20 U.S.C. Secs. 236-244 (1988 & Supp. V 1993) (the Act)).[1] The court dismissed the complaint after concluding that Highland Falls's entitlement to funds under the Act was not mandatory and that appellants therefore did not have a monetary claim against the government. We affirm.
 
 BACKGROUND
 1. The Impact Aid Act
 
 2
 Congress passed the Act in 1950. In so doing, it continued the program, initiated in 1941, of authorizing the expenditure of federal funds to assist local educational agencies or school districts affected by the federal government's extensive mobilization and production activities in World War II. The impact of federal activities on local school districts did not cease when the war ended, however, and Congress chose to authorize funds on a continuing, statutory basis. The Act is administered by the Department of Education (DOE).
 
 
 3
 The Act provides for assistance to school districts that are financially burdened by federal ownership of real property. Federal ownership of real property within a school district can financially burden the district by reducing the district's tax base or by increasing student population in the district as a result of federal activities. Section 2 of the Act is entitled "Federal contributions." It addresses financial burdens caused by federal ownership of real property within a school district and is central to this appeal. It provides, in relevant part, as follows:
 
 
 4
 (a) Federal acquisition of property within school district as financial burden entitling for contribution
 
 
 5
 Where the Secretary, after consultation with any local educational agency ... determines ...
 
 
 6
 (1) that the United States owns Federal property in the school district of such local educational agency, and that such property ... has been acquired by the United States since 1938 ... and ... had an assessed value ... aggregating 10 per centum or more of the assessed value of all real property in the school district ... and
 
 
 7
 (2) that such acquisition has placed a substantial and continuing financial burden on such agency; and
 
 
 8
 (3) that such agency is not being substantially compensated for the loss in revenue resulting from such acquisition ...
 
 
 9
 then the local educational agency shall be entitled to receive for such fiscal year such amount as, in the judgment of the Secretary, is equal to the [financial burden imposed].
 
 
 10
 20 U.S.C. Sec. 237(a).[2] Thus, once the requirements of the statute have been met, the Secretary of DOE determines a school district's entitlement to funds under Sec. 237. Other sections of the Act provide for entitlements for school districts that educate children of persons who reside and work on federal property, see 20 U.S.C. Sec. 238, or that incur a sudden and substantial increase in attendance by school children, see 20 U.S.C. Sec. 239.
 
 
 11
 The statute recognizes that Congress may choose to appropriate less money for entitlements under the Act than is required to fund those entitlements fully. That situation is addressed in the following manner:
 
 
 12
 (c) Adjustments where necessitated by appropriations
 
 
 13
 If the sums appropriated for any fiscal year for making payments on the basis of entitlements established under sections 237, 238, and 239 of this title for that year are not sufficient to pay in full the total amounts which the Secretary estimates all local educational agencies are entitled to receive under such sections for such year, the Secretary shall allocate such sums among local educational agencies and make payments to such agencies as follows:
 
 
 14
 (1)(A) The Secretary shall first allocate to each local educational agency which is entitled to a payment under section 237 of this title an amount equal to 100 percentum of the amount to which it is entitled as computed under that section for such fiscal year....
 
 
 15
 20 U.S.C. Sec. 240(c). Thus, Sec. 240(c) specifies that Sec. 237 shall be funded at 100% of entitlements in those fiscal years in which the total amount appropriated by Congress is insufficient to fund all entitlements under the Act.[3]2. Facts of the Case
 
 
 16
 In the annual appropriations laws for fiscal years 1989 through 1993, Congress did not appropriate enough money to fully fund entitlements under the Act. In those years, instead of appropriating a lump-sum amount for all entitlements under the Act, Congress specifically allocated or "earmarked" certain amounts for entitlements under various sections of the Act, including Sec. 237 entitlements. For example, in fiscal year 1989, Congress appropriated a total of $717 million for entitlements under the Act, $15 million of which was earmarked for Sec. 237 entitlements. See Pub.L. No. 100-436, 102 Stat. 1680, 1701 (1988). The remainder of the appropriated funds was earmarked for entitlements under other sections of the Act.
 
 
 17
 During fiscal years 1989 through 1993, in the face of congressional underfunding, DOE allocated funds for entitlements under the various sections of the Act based upon the amounts earmarked for those sections by Congress in the respective appropriations laws. In 1989, for example, DOE funded entitlements under Sec. 237 to the extent of the $15 million earmarked for that section by Congress, which was less than the total entitlements under that section as determined by the Secretary of DOE. Thus, in the years at issue, DOE followed Congress's specific funding directives instead of applying the allocation formula set forth in Sec. 240(c).
 
 
 18
 Since 1971, Highland Falls has annually sought and received federal funds under the Act, to compensate for the unavailability of real property tax revenue that certain real property in the school district would have produced if that property had not been owned by the federal government. The property in question is occupied by the United States Military Academy at West Point and represents more than one-half of the real property within the school district. Highland Falls qualified to receive funds under Sec. 237 in fiscal years 1989 through 1993. In each of those years, however, as a result of the congressional underfunding described above and DOE's policy of not applying the allocation formula in Sec. 240(c), the money Highland Falls received under the Act was less than its Sec. 237 entitlement, as determined by the Secretary of DOE.
 
 3. Proceedings Below
 
 19
 On March 15, 1993, appellants filed suit in the Court of Federal Claims, challenging the legality of DOE's allocation of funds under the Act. In their complaint, appellants alleged that during fiscal years 1989 through 1993, when congressional appropriations were insufficient to fund all entitlements under the Act, DOE had improperly failed to fund Sec. 237 at 100% of entitlements, as required under the allocation formula provided in Sec. 240(c). Appellants asserted that, as a result of DOE's failure to implement Sec. 240(c) properly, Highland Falls had received a total of $1,998,187.19 less during those five fiscal years than it would have received had Sec. 240(c) been interpreted and applied as they suggest.
 
 
 20
 The government moved to dismiss the complaint under Court of Federal Claims Rule 12(b)(4) for failure to state a claim upon which relief could be granted. In support of its motion, the government argued that DOE's approach of allocating funds under the Act based upon congressional appropriations was correct. In a bench ruling on January 13, 1994, the court concluded that the Impact Aid program is not a mandatory spending program and that, even if it were, the later appropriations laws superseded the Sec. 240(c) priority allocation provisions upon which appellants' complaint was based. Accordingly, the court held that Highland Falls did not have a monetary claim against the government and ordered that the complaint be dismissed. This appeal followed.
 
 DISCUSSION
 1. Standard of Review
 
 21
 A motion to dismiss for failure to state a claim upon which relief could be granted is appropriate where the plaintiff cannot assert a set of facts which would support its claim. Chang v. United States, 859 F.2d 893, 894 (Fed.Cir.1988). In reviewing the grant of a motion to dismiss under Rule 12(b)(4), we assume that all well-pled factual allegations are true and indulge in all reasonable inferences in favor of the nonmovant. Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed.Cir.1991). The question of whether a complaint was properly dismissed for failure to state a claim upon which relief could be granted is one of law, which we review independently. Id. at 1273.
 
 2. Contentions of the Parties
 
 22
 The facts are not in dispute. Rather, appellants contend that the Court of Federal Claims erred as a matter of law in holding that the earmarked funding provisions of the later-enacted appropriations laws took precedence over the priority allocation provisions of Sec. 240(c). More specifically, appellants argue that Sec. 240(c) applies to both lump-sum appropriations and earmarked appropriations. According to appellants, in the face of appropriations insufficient to fully fund entitlements under Sec. 237, DOE should have applied the formula of Sec. 240(c) and transferred funds from other programs under the Act in order to fully fund Sec. 237 entitlements.
 
 
 23
 The government argues that Sec. 240(c) requires that DOE fund Sec. 237 at 100% of entitlements only in years in which Congress enacts a lump-sum appropriation, rather than earmarked appropriations, for "making payments on the basis of entitlements established under Sections 237, 238, and 239...." 20 U.S.C. Sec. 240(c). The government contends that when the total appropriation is less than the total entitlements, and Congress specifically earmarks certain funds for programs under each section of the Act, Sec. 240(c) does not apply. Thus, according to the government, DOE correctly interpreted the statute when, in each of the relevant fiscal years, it allocated funds for Sec. 237 entitlements only to the extent of the amounts earmarked by Congress in the corresponding appropriations laws. In the government's view, DOE's approach was correct because it gave effect to all provisions of the Act and to the later appropriations laws.
 
 3. Analysis
 
 24
 Congress has charged the Secretary of DOE with the responsibility of administering the program established by the Act. In that regard, the Supreme Court has stated:
 
 
 25
 When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
 
 
 26
 Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984) (footnotes omitted). Thus, the first step in our analysis is to determine whether, as a matter of law, Congress has "directly spoken to the precise question at issue," so that we "must give effect to the unambiguously expressed intent of Congress." Id.
 
 
 27
 The "precise question at issue" in this case is whether, in the face of underfunding by Congress, DOE erred in allocating funds for Sec. 237 entitlements based upon the amounts earmarked for that section in the respective appropriations laws, instead of funding Sec. 237 entitlements at 100% in accordance with Sec. 240(c). We conclude that Congress "has directly spoken" to this question and that DOE, in following the approach it did, "g[a]ve effect to the unambiguously expressed intent of Congress." Id.
 
 
 28
 First, and most importantly, we have great difficulty imagining a more direct statement of congressional intent than the instructions in the appropriations statutes at issue here. For example, the appropriations statute for fiscal year 1989 stated: "$15,000,000 shall be for entitlements under section 2 [Sec. 237] of said Act." Pub.L. No. 100-436, 102 Stat. 1680, 1701 (1988).[4] In each of the relevant fiscal years DOE followed that mandate. Section 240(c) specifies that Sec. 237 shall be funded at 100% of entitlements in those fiscal years in which the total amount appropriated by Congress is insufficient to fund all entitlements under the Act. DOE did not apply that requirement, however, in the face of congressional underfunding of entitlements under the Act through earmarked appropriations rather than through lump-sum amounts. As we now explain, DOE's approach was consistent with statutory requirements.
 
 
 29
 Up to this point our analysis has focused upon 20 U.S.C. Secs. 237 and 240(c). Two additional statutory provisions--31 U.S.C. Sec. 1341(a)(1)(A) (1988 & Supp. V 1993) and 31 U.S.C. Sec. 1532 (1988)--also bear upon the question of whether DOE was confronted with a clear congressional mandate and whether it acted in a way that was consistent with that mandate. Section 1341(a)(1)(A) states that "[a]n officer or employee of the United States Government ... may not ... make or authorize an expenditure ... exceeding an amount available in an appropriation ... for the expenditure." Section 1532 states that "[a]n amount available under law may be withdrawn from one appropriation account and credited to another ... only when authorized by law." These two statutes are relevant because they speak directly to the "precise question at issue." Section 1341(a)(1)(A) makes it clear that an agency may not spend more money for a program than has been appropriated for that program, while Sec. 1532 provides that an agency may use money appropriated for one program to fund another program only when authorized to do so by law. It is undisputed that, in each of the relevant fiscal years, Congress appropriated specific amounts to pay for Sec. 237 entitlements. It also is undisputed that, in each of the relevant fiscal years, in order to fund Sec. 237 entitlements at 100% levels, it would have been necessary for DOE to use money appropriated by Congress for entitlements under other sections of the Act--squarely in contravention of Sec. 1532. The approach DOE followed was consistent with this statutory landscape.
 
 
 30
 "When two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." Morton v. Mancari, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). DOE's approach gave effect to both the provisions of the Act and the appropriations laws. DOE's approach gave effect to Sec. 240(c) by applying that provision when an appropriations law provided a lump-sum appropriation not specifically earmarked for various sections of the Act. DOE's approach also gave effect to the funding decisions of Congress, which earmarked specific amounts for Sec. 237 entitlements.
 
 
 31
 DOE's approach also harmonized the requirements of the Act and the appropriations statutes with the requirements of 31 U.S.C. Secs. 1341(a)(1)(A) and 1532. Specifically, DOE's approach did not require that funds appropriated for one section of the Act be redirected to fund Sec. 237 at 100% of entitlements; it thus avoided conflict with Secs. 1341(a)(1)(A) and 1532. As noted above, in order for DOE to fund Sec. 237 entitlements at 100% in accordance with Sec. 240(c), the agency would have had to transfer money from other sections' appropriations to fund Sec. 237. If DOE had followed such an approach, it would have been spending more money than Congress had appropriated for Sec. 237 entitlements, in violation of Sec. 1341(a)(1)(A). In addition, it would have been depriving at least one other section's program of funds expressly appropriated for it by Congress. Put another way, it would have been "raiding" one appropriation account, for example Sec. 238 or Sec. 239, to credit another, Sec. 237, in violation of Sec. 1532.
 
 
 32
 Finally, appellants contend that "in the present case, 20 U.S.C. Sec. 240(c) can be construed as a statute conferring transfer authority on the Department of Education," thereby enabling DOE to fund section 237 at 100% of entitlements. We disagree. The language necessary to support such a conclusion is lacking from the statute. Section 1532 provides that "[a]n amount available under law may be withdrawn from one appropriation account and credited to another ... only when authorized by law." In view of the language of the appropriations laws at issue here and the prohibition of Sec. 1341(a)(1)(A) against an agency spending more money for a program than has been appropriated for that program, we are not prepared to accept the proposition that the transfer of funds for which appellants argue was "authorized by law."
 
 CONCLUSION
 
 33
 For the foregoing reasons, we hold that Congress "has directly spoken," Chevron, 467 U.S. at 842, 104 S.Ct. at 2781, to the question of whether DOE erred in allocating funds for Sec. 237 entitlements based upon the amounts earmarked for that section in the respective appropriations laws instead of funding Sec. 237 entitlements at 100% in accordance with Sec. 240(c). We also hold that, in following the approach it did, DOE "g[a]ve effect to the unambiguously expressed intent of Congress." Id. at 843, 104 S.Ct. at 2781. Accordingly, the judgment of the Court of Federal Claims dismissing appellants' complaint for failure to state a claim upon which relief could be granted is
 
 
 34
 AFFIRMED.
 
 
 
 [1]
 Section 2 of the Act, 64 Stat. 1100, 1101, is codified at 20 U.S.C. Sec. 237 (1988 and Supp. V 1993). Citations to provisions of the Act are to the provisions as codified in the 1988 United States Code, which was in effect at the time of the events underlying appellants' complaint. The Impact Aid Act has been repealed, see the Improving America's Schools Act of 1994, Sec. 331(b), Pub.L. No. 103-382, 108 Stat. 3518, 3965, and a new Impact Aid statute enacted, see id. at Title VIII, Sec. 8001, 108 Stat. at 3749, codified at 20 U.S.C. Secs. 7701-7714 (1994). For ease of reference we refer to the provisions of the repealed Act at issue here in the present tense
 
 
 [2]
 The equivalent provision in the 1994 Act is Section 8002(a), codified at 20 U.S.C. Sec. 7702. 108 Stat. at 3749-50
 
 
 [3]
 This provision was changed in the 1994 Act. Section 8002(b)(1)(B) of the 1994 Act provides that "[I]f funds appropriated under Section 8014(a) are insufficient to pay the amount determined [to be paid to local educational agencies], the Secretary shall ratably reduce the payment to each eligible local educational agency." 108 Stat. at 3750
 
 
 [4]
 The appropriations laws for fiscal years 1990 through 1993 used substantially identical language, except for the dollar amount appropriated. See Pub.L. No. 101-166, 103 Stat. 1159, 1180 (1989) ("$15,354,000 shall be for payments under section 2 of said Act"); Pub.L. No. 101-517, 104 Stat. 2190, 2210 (1990) ("$17,000,000 shall be for Federal property payments under section 2"); Pub.L. No. 102-170, 105 Stat. 1107, 1128 (1991) ("$16,590,000 shall be for Federal property payments under section 2"); Pub.L. No. 102-394, 106 Stat. 1792, 1813 (1992) ("$16,424,000 shall be for payments under section 2")