73 F.3d 381
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 CAL-ALMOND, INC., Gold Hills Nut Company, Saulsbury Orchards
and Almond Processing, Inc., Browns Lake Ranch,
Mac Enterprises, Inc., Van Kay, Inc. and
Derk Van Konynenburg,
Plaintiffs-Appellants,
v.
The UNITED STATES, Defendant-Appellee.
 No. 94-5084.
 United States Court of Appeals, Federal Circuit.
 Dec. 20, 1995.
 
 Before ARCHER, Chief Judge, RICH, and CLEVENGER, Circuit Judges.
 DECISION
 ARCHER, Chief Judge.
 
 
 1
 Cal-Almond, Inc., et al. (Cal-Almond) appeal the judgment of the United States Court of Federal Claims dismissing, for failure to state a claim upon which relief can be granted, their action for compensation for a taking under the Fifth Amendment. 30 Fed.Cl. 244 (1994). Cal-Almond are processors ("handlers") and growers of almonds who seek compensation for alleged losses in the value of their crop due to the imposition of almond marketing controls established under authority of the Agricultural Marketing Agreement Act of 1937 (AMAA), as amended, 7 U.S.C. Secs. 601-74 (1988 & Supp.1993). Finding that Cal-Almond suffered no compensable intrusion upon their property interests in their almond crop as a result of these marketing controls, the Court of Federal Claims dismissed their complaint. We affirm.
 
 DISCUSSION
 I.
 
 2
 Since 1950, almonds have been subject to marketing controls under the AMAA. This case involves marketing orders for the years 1982-85, 1988, and 1990, which required that a percentage of the anticipated crop be held in reserve for sale to non-competitive outlets. The reserve percentage imposed varied from two percent to ten percent. Upon sale of reserve almonds to the non-competitive outlets, the net proceeds were remitted to the handlers.
 
 
 3
 Cal-Almond filed suit in the Court of Federal Claims claiming that by requiring them to sell almonds in a lower priced market their interests in the almonds were taken under the Fifth Amendment for which compensation was due. Cal-Almond alleged that they received from the non-competitive outlets approximately five percent of what they could have commanded in the open market, resulting in a loss of several million dollars in product sales. In addition, they requested compensation for several thousand dollars of Almond Board[1] expenses which they were required to absorb. Finally, they complained about the costs associated with storing the almond reserves when some of the reserves were eventually released for sale in competitive markets.
 
 
 4
 The Court of Federal Claims rejected Cal-Almond's claims for compensation finding that they did not have a property right to market their almonds free of regulation. 30 Fed.Cl. at 247. The court noted that Cal-Almond had entered the almond industry knowing it had been highly regulated for many years, and thus "must be understood to have accepted, as a condition of their continuing presence in that industry, the very mode of regulation about which they now complain." Id.
 
 II.
 
 5
 Whether the complaint was properly dismissed for failure to state a claim upon which relief can be granted is a question of law which we review de novo. Gould, Inc. v. United States, 935 F.2d 1271, 1273 (Fed.Cir.1991). In reviewing a dismissal for failure to state a claim we assume all well-pled factual allegations are true and make all reasonable inferences in favor of the nonmovant. Id. at 1274.
 
 
 6
 As with all takings jurisprudence, we start our analysis with the Fifth Amendment which commands that "private property [shall not] be taken for public use, without just compensation." To be a property interest within the meaning of the Fifth Amendment, the interest at issue must be "sufficiently bound up with the reasonable expectations of the claimant to constitute 'property.' " Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 124-25 (1978). Property rights stem from and are defined by existing rules of law. Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161 (1980) (property rights "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law" (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)).
 
 
 7
 In this case, appellants' property rights and reasonable expectations were limited by the regulatory scheme[2] existing upon their entry into the almond industry. The agriculture industry has long been pervasively regulated--the almond industry itself has been subject to marketing controls for over forty-five years. In highly regulated fields those who enter do so subject to the existing regulations and without an expectation to be free of those regulations. California Housing Sec., Inc. v. United States, 959 F.2d 955, 958 (Fed.Cir.1992) (a savings and loan institution that had "voluntarily subjected itself to an expansive statutory regulatory system" could not have developed a "historically rooted expectation of compensation" for action taken within that regulatory scheme); Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1073-74 (Fed.Cir.1994) (same). The possible restrictions and limitations on the marketing of almonds that appellants object to were clearly laid out in marketing orders before they entered the industry. Appellants, when entering this regulated field, could have had no reasonable expectation that the applicable regulatory scheme would not be enforced. Golden Pacific, 15 F.3d at 1074.
 
 
 8
 This is not to say that in a highly regulated industry, the government may regulate away all property interests. As with any regulatory scheme, one which goes too far can effectuate a taking. Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415 (1992). This is not the case here. Marketing orders similar to those at issue here have existed for many years and they have been tailored to benefit members of the almond industry as well as consumers. Indeed, appellants have received benefits therefrom. 30 Fed.Cl. at 247 n. 4 (plaintiffs' "business, as a whole, have [not] been rendered unprofitable by the Secretary's regulations").
 
 
 9
 As we have recognized, this sharing of benefits and burdens reduces the power of a taking claim. Florida Rock Indus., Inc. v. United States, 18 F.3d 1560, 1570 (Fed.Cir.1994) ("When there is reciprocity of advantage ... then the claim that the Government has taken private property has little force...." (citation omitted)); see also Penn Central, 438 U.S. at 134-35 (owner of landmark was both burdened and benefited by landmark preservation law). In a closely analogous situation, our predecessor court held that marketing controls survive a takings challenge because they are merely one of the burdens that go along with the benefits of the peanut industry price support program. Carruth v. United States, 627 F.2d 1068, 1081 (Ct.Cl.1980).
 
 
 10
 Appellants argue that a finding of no taking is tantamount to a finding that they have no property interest at all in the almonds they grow or handle. The Court of Federal Claims did not find that appellants had no property interest in their almonds. Rather, the court found that appellants did not have a property interest to be free of all regulation. Appellants plainly had no reasonable expectation to be free from and receive compensation for the complained of harm. See Loveladies Harbor, Inc. v. United States, 28 F.3d 1171, 1177 (Fed.Cir.1994) (takings recoveries are limited "to owners who could demonstrate that they bought their property in reliance on a state of affairs that did not include the challenged regulatory regime"). Thus, looking at Cal-Almond's property, the right to be free of the challenged regulatory scheme is not within Cal-Almond's bundle of property rights. California Housing, 959 F.2d at 958 ("As a consequence of the regulated environment in which [appellant] voluntarily operated, [appellant] held less than the full bundle of property rights...."). Appellants continue to enjoy the same rights and privileges they have enjoyed since entering the industry and remain able to put their almonds to essentially the same use. Thus, the reserve requirements cannot be regarded as interfering with appellants' expectations. See Penn Central, 438 U.S. at 136.
 
 
 
 [1]
 The Almond Board is an industry group comprised of almond growers and handlers created to make recommendations to the Secretary and assist in carrying out the market controls
 
 
 [2]
 We discern no factual or legal basis for appellants' arguments that the almond reserves should be considered per se takings under the principles of Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419 (1982)