108 F.3d 1393
 41 Cont.Cas.Fed. (CCH) P 77,049
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
RINCON CENTER ASSOCIATES, Appellant,
v.
Roger W. JOHNSON, Administrator, General Services
Administration, Appellee.
 No. 96-1284
 United States Court of Appeals, Federal Circuit.
 March 5, 1997.
 
 Before ARCHER, Chief Judge, SKELTON, Senior Circuit Judge, and MICHEL, Circuit Judge.
 ARCHER, Chief Judge.
 
 
 1
 Rincon Center Associates (Rincon) appeals the December 5, 1995 decision of the General Services Administration Board of Contract Appeals (Board) denying Rincon's claim for entitlement to compensation for cooling a computer room in premises it leased to the General Services Administration (GSA). We affirm.
 
 BACKGROUND
 
 2
 Rincon entered into a lease with the GSA to provide office space to the United States Court of Appeals for the Ninth Circuit. Rincon claims that, pursuant to this lease, it is entitled to compensation for providing air conditioning for periods other than normal working hours at the agreed overtime rate of $28 per hour. Rincon acknowledges that the lease requires heating, ventilation and air conditioning (HVAC) systems for the computer room capable of operating on a twenty-four hour basis. Rincon contends, however, that in consideration of the basic rent it is only required to air condition the computer room during normal working hours and is entitled to overtime compensation for air conditioning the room at other times. Accordingly, Rincon submitted an invoice to GSA covering the cost of the computer room cooling during non-working hours. On July 2, 1992, the GSA contracting officer issued a final decision denying Rincon's claim for overtime cooling for the computer room.
 
 
 3
 Rincon appealed the final decision to the Board which denied compensation. The Board held that the lease required Rincon to provide twenty-four hour cooling of the computer room. We conclude that the Board's interpretation is not in error.
 
 DISCUSSION
 
 4
 Contract interpretation is a question of law which we review de novo. Wickham Contracting Co. v. Fischer, 12 F.3d 1574, 1577 (Fed.Cir.1994). Factual findings by the Board must be sustained unless they are "fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or ... not supported by substantial evidence." 41 U.S.C. § 609(b) (1994). "Contract Interpretation begins with the plain language of the agreement." Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed.Cir.1991).
 
 
 5
 Paragraph 62 of the lease establishes Rincon's basic obligations with regard to heating and cooling.
 
 62 HEATING AND AIR-CONDITIONING
 
 6
 Thermostats shall be set to maintain temperatures between 65 and 70 degrees Fahrenheit during the heating season and 76 an 80 degrees Fahrenheit during the cooling season. These temperatures must be maintained throughout the leased premises and service areas, regardless of the outside temperatures, during the hours of operation specified in the lease.
 
 
 7
 Paragraph 71 of the lease establishes the normal working hours during which Rincon is required to provide HVAC:
 
 71 NORMAL HOURS
 
 8
 Services, utilities, and maintenance will be provided daily extending 6:00 A.M. to 7:00 P.M. except Saturdays, Sundays, and federal holidays.
 
 
 9
 Paragraph 72 of the lease states that GSA is responsible for the cost of any overtime HVAC.
 
 72 OVERTIME USAGE
 
 10
 (A) The Government shall have access to the leased space at all times including the use of elevators, toilets, lights, and small business machines without additional payment.
 
 
 11
 (B) If heating or cooling is required on an overtime basis, such service will be ordered orally or in writing by the contracting officer or GSA building manager. When ordered, services will be provided at the hourly rate negotiated prior to award. Costs for personal services shall only be included as authorized by GSA.
 
 
 12
 Prior to execution of the lease, the parties agreed upon an overtime rate for heating and cooling:
 
 
 13
 Pursuant to Paragraph No. 72 of Solicitation for Offers No. 90062 "Overtime Usage" for the first twelve (12) months of the lease term, the cost per hour for overtime usage of air-conditioning or heating is established at $28 per hour.
 
 
 14
 If the lease ended here, then as Rincon contends this case would be remarkably similar to Adelaide Blomfield Management Co. v. General Servs. Admin., GSBCA 11909, 94-2 BCA p 26,679. In Adelaide, the Board held that the government was responsible for the cost of cooling the computer room outside of normal business hours. The contract in that case was silent as to computer room cooling.
 
 
 15
 In contrast, Rincon's lease provides special requirements for additional guidance as to the computer room in a separate part of the lease entitled Special Space Requirements. The computer room section provides:
 
 SECTION VII COMPUTER SYSTEMS
 
 16
 A total of 3520 square feet of space is required for this area as follows:
 
 
 17
 ....
 
 
 18
 (B) One (1) computer room of 800 sq. ft. of space shall be provided with vinyl tile floor covering, individually zoned HVAC and lighting, and walls and ceiling of Sound Transmission Class of 45. The HVAC systems shall be provided to accommodate equipment and personnel that will generate 68,000 BTU, and humidity at 50% + or--10% with a temperature range of 50 degree to 60 degree range. The HVAC shall be maintained 24 hours and 7 days a week.
 
 
 19
 (Emphasis added). This provision forms the basis of the parties' disagreement in this case. Rincon interprets this provision that "HVAC shall be maintained" as requiring only that it provide a system for heating and cooling, satisfying the desired specifications, which is capable of running twenty-four hours a day. Accordingly, Rincon argues that it is entitled to overtime compensation for running the air conditioning for the computer room beyond the normal working hours.
 
 
 20
 GSA, on the other hand, asserts that this provision requires Rincon to provide the stated temperature range for the computer room twenty-four hours per day and that the cost of doing so is included in the base rent. It contends that the general provision of the lease (p 62) stating that air conditioning shall not be provided during non-working hours must yield to the more specific provision requiring heating and cooling for the computer room. GSA argues that if p 62 is interpreted as applying to the computer room, there is a conflict between the temperature range for cooling during working hours (76 to 80 degrees) and the temperature which is to be maintained in the computer room at all times (50 to 60 degrees). It also argues that Rincon's interpretation of the contract would render meaningless p 72 which requires GSA to pay on an hourly basis for overtime cooling if it is needed.
 
 
 21
 The lease should be interpreted to give meaning, if possible, to all of its parts. See Gould, 935 F.2d at 1274. Although the lease could have been written in a manner that would have prevented this controversy, it was not. We are, thus, required to interpret the disputed language and we conclude that the Board was correct in holding that the computer room provision contemplated as part of the base rent such heating or cooling as was necessary to maintain the 50-60 degree temperature range.
 
 
 22
 The computer room provision of the lease requires Rincon to maintain the HVAC twenty-four hours a day, seven days a week. It is quite clear that the computer room heating and cooling requirements are an exception to the general temperature requirement for the rest of the building, both in terms of the temperature ranges and the periods for which such controlled temperatures are to be provided. These more specific provisions must be viewed as specific lease requirements beyond the more general provisions. See Dalton v. Cessna Aircraft Co., 98 F.3d 1298, 1305 (Fed.Cir.1996) ("where an agreement contains general and specific provisions which are in any respect inconsistent, 'the provision directed to a particular matter controls over the provision which is general in its terms' " (quoting Hills Materials Co. v. Rice, 982 F.2d 514, 517 (Fed.Cir.1992))); Hol-Gar Mfg. Corp. v. United States, 351 F.2d 972, 980 (Cl.Ct.1965) (referring to the "settled rule that where an agreement contains general and specific provisions which are in any respect inconsistent or conflicting, the provision directed to a particular matter controls over the provision which is general in its terms").
 
 
 23
 Rincon argues that the requirement to "maintain" relates only to the capability of the computer room equipment and not to the actual provision of cooling. We disagree. While the computer room provision is included in a section of the lease dealing with special space requirements, we are convinced that it requires, and was intended to require, the maintenance of the described temperature range. Immediately after setting forth the required temperature range of the HVAC systems, the lease provides that HVAC "shall be maintained," not that the equipment be maintained, twenty-four hours per day, seven days a week. Moreover, as the Board found, Rincon's reading of the computer room provision would be inconsistent with the provisions regarding overtime usage and the temperatures for other parts of the leased premises as set forth in the general provisions.
 
 
 24
 Even if we were to conclude, as Rincon suggests, that the lease provision is ambiguous, resort to parol evidence causes us to reach the same conclusion regarding the contract interpretation. See Beta Sys., Inc. v. United States, 838 F.2d 1179, 1183 (Fed.Cir.1988) (parol evidence is admissible for purposes of resolving an ambiguity in the contract); George Hyman Constr. Co. v. United States, 832 F.2d 574, 579 (Fed.Cir.1987) (same). Further, if the ambiguity is patent, a burden of inquiry would be on the contractor. Fortec Constructors v. United States, 760 F.2d 1288, 1291 (Fed.Cir.1985).
 
 
 25
 The parol evidence in this case supports GSA's interpretation of the contract. Only the testimony of Rincon's general manager, Mr. Newman, supports Rincon's allegations that during negotiations GSA agreed to pay the $28 per hour overtime rate for cooling the computer room. The Board, which heard the testimony and had the opportunity to evaluate Mr. Newman's demeanor, expressly found that this testimony was not credible. There was evidence that Mr. Newman was always accompanied during the negotiations by other members of the Rincon team. Yet, neither of the other two individuals (Mr. Collins or Mr. Chamberlin) corroborated Mr. Newman's claims that GSA had agreed to pay overtime for cooling the computer room. Credibility determinations by the Board are virtually unreviewable. See Statistica, Inc. v. Christopher, 102 F.3d 1577, 1583 (Fed.Cir.1996); Hambsch v. Department of Treasury, 796 F.2d 430, 436 (Fed.Cir.1986).
 
 
 26
 In contrast, the Board found the testimony of Mr. Draley, the original contracting officer, "highly credible." Mr. Draley testified that he never agreed that the government would pay at the overtime rate for computer room cooling. Mr. Draley testified that such a commitment would be contrary to established GSA policy regarding computer room cooling.
 
 
 27
 Rincon also claims that when it originally submitted its claim for compensation for computer room cooling, the then contracting officer, Mr. Perez, recognized that Rincon was entitled to payment of these charges. Rincon relies on a memo in the record written by Mr. Perez which stated in pertinent part:
 
 
 28
 Per p 16 of the lease, Government has to pay $28.00 per hour for computer room HVAC usage beyond normal hours
 
 
 29
 However, the Board found that Mr. Perez was not the original contracting officer who negotiated the contract and that he died before reaching a final determination regarding Rincon's claims. The administration of the contract then reverted to Mr. Draley, the negotiator of the contract. The Board gave greater weight to the interpretation of Mr. Draley than to that of Mr. Perez. The Board also considered the testimony of Ms. Sanders, the GSA realty specialist, who drafted the Special Space Requirements section of the lease. Ms. Sanders testified that she understood the lease to require that the computer room be cooled twenty-four hours per day.
 
 
 30
 Accordingly, we affirm the decision of the Board.