# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Ft. McCoy Shipping & Services | ) ASBCA No. 58673 |
| | ) |
| Under Contract No. MCC 08-205 | ) |

APPEARANCE FOR THE APPELLANT:  Ms. Jane Barnas
                                Owner

APPEARANCES FOR THE GOVERNMENT:  Raymond M. Saunders, Esq.
                                   Army Chief Trial Attorney
                                 MAJ Matthew A. Freeman, JA
                                 Kyle E. Chadwick, Esq.
                                   Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE YOUNGER

This is an appeal under a negotiated concession contract with the Army & Air Force Exchange Service (AAFES). Appellant, Ft. McCoy Shipping & Services (Ft. McCoy or appellant), agreed to operate a business center on a military facility and seeks costs that are said to result from alleged mismanagement of its contract. AAFES argues that appellant seeks ordinary business losses for which the contract affords no basis for recovery. We deny the appeal.

## FINDINGS OF FACT

1. By date of 30 April 2008, AAFES awarded Contract No. MCC 08-205 to Ft. McCoy, which was "a negotiated contract for concession operation of a business center located at Ft. McCoy, WI." The stated period of performance was for five years, from 1 May 2008 through 30 April 2013, "unless extended or sooner terminated according to contract general provisions." (R4, tab 1 at 2)

2. The contract contained a clause setting forth historical sales data. The clause provided, however, that "AAFES makes no warranty, express or implied, of the gross sales to be realized" by appellant in operating the business center (R4, tab 1 at 2).

3. The contract contained General Provisions (GP). GP 1, AUTHORITY TO BIND (NOV 95), defined the term "contracting officer" and provided in part that: "AAFES has no obligation to recognize or accept waivers or changes to this contract that result from the actions of officials other than the contracting officer. Claims based on such actions may be denied." (R4, tab 1 at 5)

4. GP 4, ORAL REPRESENTATIONS (JAN 94), stated that "[a]ny changes or amendments [to the contract] may not be recognized by AAFES unless committed to writing and incorporated by reference into the contract by the contracting officer" (R4, tab 1 at 5).

5. The contract also contained a Termination clause. GP 8, TERMINATION (JUN 94), provided that the "contract may be terminated in whole or in part by either party immediately upon written notice to the other party in the event of breach of this contract by the other party," or otherwise, "upon thirty (30) days notice...in writing to the other party" (R4, tab 1 at 6).

6. The contract also contained a Disputes clause. GP 11, DISPUTES (FEB 95), provided, *inter alia*, that "[t]his contract is subject to the Contract Disputes Act." It also provided that the contractor could appeal a contracting officer's final decision on a claim to the Board within 90 days of receipt, or to the Court of Federal Claims within one year of receipt. (R4, tab 1 at 6-7)

7. The contract also contained Special Provisions (SP). SP 3, EQUIPMENT, FURNITURE, AND MOVABLE TRADE FIXTURES (DEC 07), provided in part that

> Concessionaire will provide and install all the equipment, furniture and movable trade fixtures required by this contract.... Concessionaire will maintain and repair or replace, as necessary, all concessionaire furnished equipment, furniture and fixtures.... Concessionaire investment in equipment, furniture and fixtures for this contract is a business risk of the concessionaire. It is expressly understood and agreed that neither AAFES nor any other agency or instrumentality of the United States is or will be liable to concessionaire for [the] costs of concessionaire's investing in equipment, furniture or movable trade fixtures in the event of termination of this contract without extension.

(R4, tab 1 at 24)

8. SP 12, UTILITIES (APR 05), provided in part that "[c]oncessionaire will pay all costs for telephone service used in performance of this contract" (R4, tab 1 at 25).

9. In Exhibit E to the Special Provisions, Fee Schedule, the parties agreed that appellant would pay to AAFES 15 percent of adjusted gross sales for services and

retail product offerings, and 12.5 percent of adjusted gross sales for parcel/package delivery and mail services (R4, tab 1 at 39).

10. The parties agreed to several amendments of the contract. By Amendment No. 2, effective 15 June 2010, they agreed to "[r]evise the fee percentage [that appellant paid to AAFES, *see* finding 9] to 8% for all services and sales" (R4, tab 3 at 1). By Amendment No. 3, effective 1 June 2010, they agreed to reduce the concession fee, calculated as a percentage of gross receipts paid by appellant to AAFES (R4, tab 4).

11. By email dated 20 February 2012, to a contract specialist, Jane Barnas, Ft. McCoy's proprietor, stated that appellant was having financial difficulties. Despite SP 12 (*see* finding 8), Ms. Barnas stated that she had been "under the assumption" when she signed the contract "that internet/phone service was included" and she asked "[h]ow to dissolve my contract/business if and when it comes to that." (R4, tab 6 at 3)

12. In March 2012, Dylan Blount, the contracting officer's representative, had a base telephone installed in appellant's facility at no cost to appellant (tr. 114, 123-24). Thereafter, by email to Mr. Blount dated 7 March 2012, Ms. Barnas stated that this analog telephone was "not the service needed," and that, instead, "[i]t is the internet/phone service that I need" (R4, tab 6 at 1-2).

13. The record reflects that, during contract performance, appellant paid $146.11 to Band Box Cleaners & Laundry, Inc., to lease and clean certain rugs (compl., ex. D). We find no contract provision requiring AAFES to lease or clean rugs. We further find, from the testimony of Mr. Blount, that it is not AAFES' practice to supply rugs to concessionaires (tr. 127).

14. By letter to AAFES dated 23 May 2012, appellant served its "official notice to terminate" the contract, and stated that it planned to "close [the] doors at Ft McCoy Shipping no later than July 15, 2012" (compl., ex. 10 at 1).

15. Inexplicably, when appellant's termination notice reached AAFES, it was not referred internally to a contracting officer for action (tr. 109, 112). The record contains testimony from the AAFES service business manager that "[o]nce you submit a 30 day notice, you can walk away from a contract" (tr. 109). Nonetheless, when the 30-day notice provision in the Termination clause elapsed on or about 22 June 2012, appellant continued performing and continued to perform after the "no later than" date of 15 July 2012.

16. By email to appellant dated 24 May 2012, a contract specialist inquired, "[w]hat type of financial urgency are you having? Please advise." (Compl., ex. 11) Thereafter, following exchanges stretching over four months, appellant submitted a

3

second notice of termination by undated letter from Ms. Barnas to Mr. Blount and a contract specialist seemingly sent on 20 September 2012 (compl., ex. 16).

17. The contracting officer replied by letter to appellant dated 25 September 2012 and referred to "your letter of 20 September 2012 providing a notice of termination of the contract" (R4, tab 10), and we find that the second termination notice was dated 20 September 2012.

18. By letter dated 29 November 2012, La Crosse Talent Services Inc. (La Crosse) submitted a claim to the contracting officer for "undue costs in the amount of $17,000," which was said to be "a direct result of on-going contract mismanagement" (R4, tab 13). The record contains evidence that La Crosse does business as Ft. McCoy (tr. 8, 150). Thereafter, by letter dated 11 January 2013 the contracting officer denied the claim and stated that her decision could be appealed to this Board (R4, tab 14). After further written exchanges with AAFES, appellant appealed to the Board by letter dated 23 May 2013. We previously held that appellant timely complied with the appeal requirements when it disputed the final decision in a letter to the contracting officer on 16 January 2013. *Ft. McCoy Shipping & Services*, ASBCA No. 58673, 13 BCA ¶ 35,429.

19. By date of 14 February 2008, La Crosse had entered into a separate contract with the U.S. Postal Service to operate a Contracted Postal Unit (CPU) at Ft. McCoy (compl., ex. B). The CPU was co-located with the business center to provide a "one stop shop," combining both shipping and postal services for military and civilian personnel who were either being posted overseas, or were returning home for demobilization (tr. 45-48, 53, 69-70, 142-43).

## DECISION

In the claim that it submitted to the contracting officer on 29 November 2012, Ft. McCoy asserted entitlement to $17,110.06 (finding 18). In its complaint, Ft. McCoy asserts the same amount, which it itemizes as follows:

- Phone/Internet — $1,392.33
- Rug runners — $146.11
- Accounting Services — $900.00
- Loss of Wages — $9,333.31 (7 months CPU earnings)
- Accrued wages — $5,338.31
- Total — $17,110.06

We consider these categories of costs in turn below.

4

With respect to the $1,392.33 in phone/internet costs, we conclude that appellant is not entitled to recover. In advancing this component of the claim, appellant disregards SP 12, which provides that "[c]oncessionaire will pay all costs for telephone service used in performance of this contract" (finding 8). We cannot treat a contract provision as "useless, inexplicable, inoperative, [or] void" *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991), and, giving effect to SP 12, deny recovery.

With respect to the $146.11 for rug runners (finding 13), we conclude that appellant is not entitled to recover. Appellant cites no contractual basis for its claim for this item. Regardless, we cannot harmonize appellant's argument with SP 3, which provides that appellant's "investment in equipment, furniture and fixtures for this contract is a business risk of the concessionaire" (finding 7). *Cf. International Hair*, ASBCA Nos. 50948, 51053, 01-1 BCA ¶ 31,393 at 155,099, *modified*, 02-1 BCA ¶ 31,768 (denying recovery for unamortized investment in facilities).

With respect to the $900.00 claimed for accounting services, we conclude that appellant is not entitled to recover. Appellant cites no contractual basis for recovering such expenses, and they otherwise appear to constitute a contractor's ordinary and necessary business expense.

With respect to the $9,333.31 in loss of wages, the claimed amount relates to the contracted postal unit, which was the subject of a separate contract (*see* finding 19), which is not before us in this proceeding.

With respect to the $5,338.31 in accrued wages, appellant's owner characterizes them further as an investment "which would have never occurred if AAFES would have accepted my initial termination notice in May of 2012" (compl. at 4). Taking appellant's characterization on its face, we conclude that appellant invested these funds to continue performance as a volunteer. As the AAFES service business manager testified, "[o]nce you submit a 30 day notice, you can walk away from a contract" (finding 15). Work as a volunteer is not compensable. *E.g., COSTAR III, LLC*, ASBCA No. 55296 *et al.*, 10-1 BCA ¶ 34,341 at 169,608, *aff'd on recon.*, 10-2 BCA ¶ 34,548 (rejecting contractor's claim for alleged provision of higher level of service than contract required because "any actions which it undertook in this regard were those of a volunteer and are not compensable").

## CONCLUSION

The appeal is denied.

Dated: 20 September 2016

ALEXANDER YOUNGER
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58673, Appeal of Ft. McCoy Shipping & Services, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals