**Stephen R. GOLDSMITH and Maureen E. Goldsmith, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 97–570C.

United States Court of Federal Claims.

Jan. 12, 1999.

James D. Claytor, Lafayette, CA, for plaintiff.

Karren Dickson Vance, United States Postal Service, Washington, DC, for defendant.

### *ORDER*

MILLER, Judge.

Before the court on the parties' cross-motions for summary judgment, this case involving seismic retrofit work required by a contract performed on property leased by a government agency raises issues of 1) whether the Government is liable under the language of the lease amendment for the cost of the city permit application fee, the disallowed portion of the contractor's charges for overhead and profit, and the lessors' legal fees incurred during the course of the seismic retrofit; and 2) whether the Government is responsible for the costs of repairs to the glulam beams above the loading dock on a separate property. Argument is deemed unnecessary.

### FACTS

The following facts are undisputed, unless otherwise noted. Stephen R. Goldsmith and Maureen E. Goldsmith ("plaintiffs"), separately leased two properties to the United States Postal Service (the "Postal Service").

1. *The Berkeley lease*

On December 27, 1990, the parties entered into a lease of property located in Berkeley, California (the "Berkeley lease"). The Postal Service leased the premises with the intent of using the building and surrounding property as a post office. This lease was renewed for a five-year term beginning December

1995. During the term of this lease, the City of Berkeley required seismic retrofit work on the building. Plaintiffs contend, and defendant does not challenge, that the Postal Service advised that it would reimburse plaintiffs for the cost of the seismic work upon completion.[1] Plaintiffs sought bids from several contractors and hired the lowest responsive and responsible bidder, Jay–Beck Group.

Prior to commencing work, the contractor applied for a permit from the City of Berkeley and paid the permit fee. The City of Berkeley refused to issue a permit, however, unless or until the contractor complied with its handicapped-accessibility requirements for lavatories. After receiving this information from the contractor, the Postal Service indicated that it would assert jurisdiction over the project, thereby obviating the need for a permit. The parties executed an amendment, effective June 15, 1996, to the Berkeley lease memorializing this decision.

The amendment stated that the Postal Service would be preempting jurisdiction over the project and, further, that plaintiffs "will not apply for or receive a permit from the City of Berkeley which would require additional handicapped access work." The amendment also provided: "Upon 100% completion of the seismic work according to the plans and specifications and inspection and acceptance of the seismic work by the Postal Service, the Postal Service will reimburse [plaintiffs] for the cost of the seismic work." This amendment did not alter other provisions delineated in the Berkeley lease.

The seismic retrofit work was completed and accepted after inspection by the Postal Service. Plaintiffs submitted a bill to the Postal Service for reimbursement. The Postal Service remitted the entire amount to plaintiffs, save $9,783.21.00. This amount forms the basis for plaintiffs' first cause of action. The sum of $1,536.96, disallowed by the Postal Service, represents the cost of the city permit fee, $875.10, as well as a portion of the contractor's fee, $661.86. The balance of $8,246.25 represents the legal fees of plain-

tiffs' attorney, who interfaced with the City of Berkeley to ensure compliance with the seismic requirements. The parties dispute whether these amounts were reasonably incurred in the course of completing the seismic retrofit work and whether these sums are compensable under the lease amendment.

### 2. The Frazier Park lease

On October 27, 1987, plaintiffs' predecessors in interest executed a similar lease with the Postal Service concerning property in Frazier Park, California (the "Frazier Park lease"). This lease was subsequently renewed for a period of five years in November 1997. The Frazier Park lease contained a Maintenance Rider stating, in pertinent part: "The Postal Service shall be responsible for common repairs to and maintenance of the demised premises except for those repairs that are specifically made the responsibility of the lessor in this lease." Per the rider, plaintiffs, as lessors, were responsible for "all structural repairs to the demised premises: Structural repairs ... shall be limited to the foundation, bearing walls, floors (not including floor covering), column supports and all parts of the roof system (including, but not limited to, roof covering, flashing and insulation)."

By letter dated February 24, 1997, the postmaster of the Frazier Park Post Office reiterated a request made December 2, 1996, that plaintiffs repair the cracked glulam roof beams over the loading dock in accordance with plaintiffs' responsibilities under the lease. The letter further advised that, if plaintiffs failed to respond or take action within 30 days, the Postal Service would solicit proposals for the work and deduct the cost of such work from future rent payments. Plaintiffs' attorney sent a written response, dated March 5, 1997, to the contracting officer indicating that the work required was "routine maintenance ... needed to prevent structural problems from arising," and therefore was not plaintiffs' responsibility under

---

1. In its motion for summary judgment, defendant concedes that the lease amendment was a formalization of the parties' agreement with regard

to the seismic work. See Def's Br. filed July 30, 1998, at 5.

the lease.[2] After receiving no reply, plaintiffs' attorney sent another letter, dated March 14, 1997, informing the contracting officer that, in light of the approaching 30–day deadline and lack of response, plaintiffs would have the work completed and seek reimbursement from the Postal Service. On April 8, 1997, plaintiffs' attorney wrote that proposals were being solicited and that plaintiffs expected the work to be completed in approximately 30 days. This letter also alerted the Postal Service that plaintiffs intended to institute "litigation ... regarding this and other matters ... within ten ... days."

In April 1997 the work was completed on the glulam beams at a cost of $2,125.00. This amount represented the fee charged by Randolph Construction in completing the work, $1,650.00, as well as an additional $475.00 charged by plaintiffs' structural engineer for evaluating the premises. Believing the repair to be one of routine maintenance, and not structural in nature, plaintiffs requested reimbursement from the Postal Service. Plaintiffs took the position that the February 24, 1997 letter constituted a formal rejection of the claim for reimbursement.

Plaintiffs filed a complaint seeking, *inter alia,* reimbursement for the seismic retrofit work for the Berkeley property in the amount of $9,783.21, as well as $2,125.00 resulting from the repair work to the Frazier Park property glulam beams.

## DISCUSSION

### 1. *Summary judgment*

Summary judgment is appropriate only when the moving party is entitled to judgment as a matter of law and there are no disputes over material facts that may significantly affect the outcome of the suit. *See* RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine dispute concerning a material fact exists when the evidence presented would permit a reasonable jury to find in favor of the non-movant. *See Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505. The moving party bears the burden of demonstrating the absence of genuine disputes over material facts. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In its analysis the court may neither make credibility determinations nor weigh evidence and seek to determine the truth of the matter. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.; see H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984) (noting that non-moving party shall "receive the benefit of all applicable presumptions, inferences, and intendments").

### 2. *The Berkeley lease*

Defendant argues that plaintiffs' claims for reimbursement of the building permit fee, the portion of the contractor's overhead and profit fee previously disallowed, and legal fees do not fall within the lease amendment because they do not come within the provision providing for reimbursement of the "cost of the seismic work." The lease amendment, effective June 15, 1996, provided specifically that: "Upon 100% completion of the seismic work according to the plans and specifications and inspection and acceptance of the seismic work by the Postal Service, the Postal Service will reimburse [plaintiffs] for the cost of the seismic work." Relying on *Black's Law Dictionary* (5th ed.1979), defendant proposes that the word "cost" is defined as recovery of expenses by a prevailing party to litigation and, further, that the word "fee" is defined as " 'a charge fixed by law for services of public officers or for use of a privilege under control of government.' " Def's Br. filed July 30, 1998, at 7 (quoting *Black's Law Dictionary* 553). In light of these definitions, defendant contends 1) that the permit fee, attorneys' fees, and contrac-

---

**2.** In support of their position, plaintiffs relied upon an October 7, 1996 opinion letter by Besim O. Bilman, a structural engineer, who inspected the glulam beams on the loading dock at plaintiffs' request and concluded that "the cracks do not represent a structural danger. However, we are of the opinion that without proper repairs, the condition of these beams will deteriorate further and they will become structurally deficient."

tor's fees do not fall within the definition of costs such that they would fall within the language of the amendment, precisely because they are "fees," not "costs"; and 2) that the permit fee and attorneys' fees were unnecessary and therefore "should not be considered ... reimbursable *cost[s]* of the Postal Service, pursuant to the Lease Amendment language." Def's Br. filed July 30, 1998, at 8.

Plaintiffs respond that all costs were reasonably incurred during the course of the retrofit work and consequently fall within the purview of this lease amendment provision. Contesting defendant's definition of "cost," plaintiffs assert that the parties could not have intended this meaning when executing the lease amendment, "because, if [this meaning was intended] then *none* of plaintiffs' costs incurred in connection with the seismic work-including even construction materials and labor costs-would fall within the contract's definition of 'cost of the seismic work' to which plaintiffs would be entitled to reimbursement ...." Plfs' Br. filed Sept. 9, 1998, at 5. "By reading out of existence all possible reimbursable costs, defendant's definition of the term 'cost' renders the reimbursement provision of the Berkeley Lease Amendment a nullity." *Id.* Relying upon a layperson's definition of the term "cost," plaintiffs contend that all three contested fees fall within the provisions of the lease amendment thus entitling them to reimbursement.

■ Contract interpretation is a question of law and thus presents an appropriate question for resolution on summary judgment. *See Dalton v. Cessna Aircraft Co.*, 98 F.3d 1298, 1305 (Fed.Cir.1996); *Government Sys. Advisors, Inc. v. United States*, 847 F.2d 811, 812 n. 1 (Fed.Cir.1988). The court's examination begins with the plain language used by the parties in contracting. *See Textron Defense Sys. v. Widnall*, 143 F.3d 1465, 1468 (Fed.Cir.1998); *Aleman Food Servs., Inc. v. United States*, 994 F.2d 819, 822 (Fed.Cir.1993). When the contract language is unambiguous, the court's inquiry is at an end and the plain language of the contract is controlling. *See Textron Defense Sys.*, 143 F.3d at 1469. A contract term is unambiguous when there is only one reasonable interpretation. *See Triax Pac., Inc. v. West*, 130 F.3d 1469, 1473 (Fed.Cir.1998); *A-Transport Northwest Co., Inc. v. United States*, 36 F.3d 1576, 1584 (Fed.Cir.1994); *see also Community Heating & Plumbing Co. v. Kelso*, 987 F.2d 1575, 1579 (Fed.Cir.1993) (noting that contract is ambiguous where two reasonable interpretations are consistent with contract language). The mere fact that the parties may disagree with regard to the interpretation of a specific provision does not, in and of itself, render that provision ambiguous. *See Community Heating & Plumbing Co.*, 987 F.2d at 1579; *Brunswick Corp. v. United States*, 951 F.2d 334, 337 (Fed.Cir.1991). If, however, a latent ambiguity arises when interpreting a contractual provision, the proper interpretation is the reasonable and internally consistent one. *See Brunswick Corp.*, 951 F.2d at 337. The joint intent of the parties, if ascertainable, is decisive. *See Edward R. Marden Corp. v. United States*, 803 F.2d 701, 705 (Fed.Cir.1986). " 'It is the general law of contracts that in construing ambiguous and indefinite contracts, the courts will look to the construction the parties have given to the instrument by their conduct before a controversy arises.' " *Id.* (quoting *United States v. Cross*, 477 F.2d 317, 318 (10th Cir.1973)); *see Highway Prods., Inc. v. United States*, 208 Ct.Cl. 926, 938, 530 F.2d 911, 917 (1976) ("Where there is an ambiguity in the contract instrument, it is appropriate to go outside the formal documents and ascertain the intent of the parties ....").

■ Defendant's argument is not persuasive. The contract must be considered as a whole and interpreted " 'to effectuate its spirit and purpose' " giving " 'reasonable meaning to all of its parts.' " *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed.Cir. 1991) (quoting *Arizona v. United States*, 216 Ct.Cl. 221, 235-36, 575 F.2d 855, 863 (1978)); *see Fortec Constructors v. United States*, 760 F.2d 1288, 1292 (Fed.Cir.1985). Such construction " 'will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result.' " *Gould, Inc.*, 935 F.2d at 1274 (quoting *Arizona*, 216 Ct.Cl. at 235-36, 575

F.2d at 863); *see Fortec Constructors,* 760 F.2d at 1292. Plaintiffs correctly contend that defendant's interpretation of the word "cost" would render the entire reimbursement provision null and void. This result was not intended by the parties when executing the bilateral amendment because the language at issue indicates unambiguously that plaintiffs were to be reimbursed upon completion of the seismic retrofit work. Defendant's interpretation is thus unreasonable. The more reasonable interpretation of this language is that all costs reasonably incurred in the course of completing the work would be reimbursed. The question devolves to whether the costs claimed were reasonable.

■ The building permit fee was paid when the application was submitted by the contractor in December 1995. Subsequently, in August 1996, the Postal Service asserted jurisdiction over the project removing the permit requirement,[3] although the assertion of jurisdiction occurred only after the permit application was denied conditionally pending compliance with handicapped-accessibility requirements promulgated by the City of Berkeley. Plaintiffs had no reason to believe that a building permit would not be required prior to this assertion of jurisdiction. Defendant is correct that plaintiffs thereafter were not required to obtain a permit, but the initial application was not thereby rendered unreasonable, and plaintiffs should not be penalized for the city's refusal to refund the application fee. Because such a fee was reasonable in the course of performance, plaintiffs are entitled to recover the cost of the permit application fee as part of the "cost of the seismic work" under the lease amendment.

■ The question of reasonableness also arises with regard to the disallowed portion of the contractor's overhead and profit fee. The Postal Service refused to reimburse plaintiffs for the cost of the building permit application fee, $875.10, because a permit was

never issued to the contractor. In addition, determining that the standard construction industry commission rate for profit and overhead was 10% for a company that oversees the work being performed, the contracting officer disallowed the 20% rate charged by the contractor because the work was performed by other companies. The contracting officer also denied the 20% fee for the $1,400.00 charged for time spent coordinating inspections and resolving the permit issue. The contracting officer nonetheless permitted a 10% commission, $341.60, based upon the total amount allowed for testing. The contractor later reduced its fee by $316.54, which amount plaintiffs have subtracted from their claim. The outstanding unpaid balance equals $1,536.96, which plaintiffs contend is both appropriate and reasonable.

Defendant asserts that, in denying plaintiffs' claim for reimbursement, the Postal Service made a distinction between a general contractor's responsibility with regard to the work of its subcontractors and the lack of responsibility with regard to independent contracting firms. Plaintiffs, in contrast, contend that the contractor's fees were reasonable regardless of whether the contractor performed the work or supervised another firm. Although the parties have submitted declarations and other evidence to support their respective positions, the court is not permitted to weigh evidence or make credibility determinations for purposes of these cross-motions. As a result, although the fees of the contractor fall within the lease provision as a reasonable cost of completing the seismic work, the court cannot determine whether 10% or 20% is the appropriate and customary fee for a contractor within this field or to which figures such a percentage is properly applied, and summary judgment must be denied in this regard.

■ Defendant analogizes the costs claimed by plaintiffs for attorneys' fees to

---

**3.** The Postal Service may ignore local town or city requirements by virtue of the powers conferred by the Supremacy Clause of the United States Constitution. *See* U.S. CONST. art. VI, cl. 2; *see also* U.S. CONST. art. 1 § 8; *United States Postal Serv. v. Town of Greenwich,* 901 F.Supp. 500, 504–05 (D.Conn.1995). The Berkeley lease

amendment, effective as of June 15, 1996, stated expressly that the Postal Service would notify the City of Berkeley that it was asserting jurisdiction over the seismic retrofit project and further that plaintiffs would neither apply for nor receive a permit from the City of Berkeley.

those awarded to the successful party in litigation. As the Government has not waived sovereign immunity in this regard, defendant argues that such an award would be improper. Although acknowledging that plaintiffs are not making an argument based upon the Equal Access to Justice Act, 28 U.S.C.A. § 2412(d)(1)(A), (d)(2)(A), (d)(2)(F) (West 1994 & Supp.1998) (the "EAJA"), defendant adopts the same analysis. Defendant also contends that plaintiffs argument should fail because the lease amendment does not state specifically that attorneys' fees are included within the costs of the seismic work to be reimbursed. Applying its definitions, defendant, noting that the majority of costs claimed are for attorneys' fees, contends that "the term 'cost' usually does not include the word 'fee' as in attorney's fees." Def's Br. filed July 30, 1998, at 11.

Plaintiffs have the better argument that the EAJA, which was intended to supply a statutory basis for recovery of attorneys' fees in specific circumstances, has no applicability in this instance because the claim is grounded upon a contractual right. Plaintiffs also contend that the legal fees claimed in this instance resulted primarily from communications between the City of Berkeley and the Postal Service to resolve issues relating to the denial of the building permit application. As such, "plaintiffs do not seek reimbursement of these legal fees qua legal fees, but, rather, as part of the necessary cost of the seismic work." Plfs' Br. filed Sept. 9, 1998, at 3. Plaintiffs maintain that their attorney was "the most efficient and effective person to engage in the required interface with the City [of Berkeley]." Id. at 8. Regardless of whether another person or the contractor could have handled communications with the city and then charged plaintiffs for the cost of such work, plaintiffs argue that such an expense properly was classified as a cost of the seismic work for which they are entitled to reimbursement because that cost was reasonably incurred during the course of performance.

While not disputing that the fees in question were incurred in connection with the completion of the seismic retrofit work, defendant takes the position that "[t]he seismic work could have been completed without these services ...." Def's Statement of Genuine Issues, filed Oct. 6, 1998, ¶ 11. It is true that a party other than plaintiffs' attorney could have conducted communications between the city, the Postal Service, and the contractor regarding denial of the permit and compliance with the city's regulations, but plaintiffs would still have been charged for such services because they were necessary prior to the assertion of jurisdiction by the Postal Service. On this basis the court finds that plaintiffs' attorneys' fees were reasonably incurred during the course of the seismic retrofit and concludes that they fall within the ambit of the lease amendment as a reimbursable cost. Although defendant contests the fees in their entirety, arguing that the work "could have been completed without these services," id., defendant does not contest the specific charges listed by plaintiffs' attorney and supported by his declaration, which comprise the total sum. Pursuant to RCFC 56(c), (d), the court grants plaintiffs' cross-motion on this claim.

### 3. The Frazier Park lease

■ The controlling provision with regard to the repair of the glulam beams over the loading dock is found in the Maintenance Rider, which provides, in pertinent part: "The Postal Service shall be responsible for common repairs to and maintenance of the demised premises except for those repairs that are specifically made the responsibility of the lessor in this lease." Plaintiffs, as the lessors, were responsible for structural repairs, which according to the Maintenance Rider, inter alia, encompassed "all parts of the roof system (including, but not limited to, roof covering, flashing and insulation)." Focusing on these provisions, defendant argues that "[a] beam is simply a horizontal column support for a ceiling or roof." Def's Br. filed Oct. 6, 1998, at 7. Thus, defendant contends that, because "the repairs needed here were located on the loading dock roof, they are the specific responsibility of [plaintiffs]," Def's Br. filed July 30, 1998, at 13, irrespective of whether these repairs constituted structural or routine maintenance work.

Plaintiffs challenge defendant's interpretation of the phrase roof system as "inherently unreasonable." Plfs' Br. filed Sept. 9, 1998, at 10. Although acknowledging their responsibility to maintain and repair the roof system, plaintiffs argue that this definition would extend to include the walls and foundation of the building, which also support the roof. They posit that a reasonable interpretation of this provision would define a roof system as those materials installed onto the structure of the building. According to plaintiffs, the weatherproofing performed on the glulam beams was general maintenance and therefore did not constitute a repair for which they should be responsible. Having failed to include in the contract the definition defendant now seeks to enforce, plaintiffs contend that the language at issue should be construed against the Postal Service.

A plain reading of the Maintenance Rider supports the interpretation that plaintiffs are responsible for maintenance on "all parts of the roof system." The roof system specifically includes, but is not limited to, insulation, covering, and flashing. Through such language, the parties intended unambiguously to encompass more within the roofing system than the three items specifically listed. Consequently, the court must determine a reasonable interpretation of the term "roof system." Applying a layperson's definition, a roof system consists of the exterior roof and its immediate support structure. Such structure would reasonably include hoists, joints, and support beams.[4] Although plaintiffs contend that an extension beyond those materials added to the structure would result in so broad a definition as to include the foundation of the building, the court is not persuaded and concludes that its interpretation is sufficiently limited to the features of the roof.

Furthermore, plaintiffs' position that the glulam beams are not part of the roofing system is belied by the evaluations of three of the five firms plaintiffs hired to assess the repair work needed on the loading dock. The October 7, 1996 letter from plaintiffs' structural engineer, stated specifically that

"[t]he purpose of our inspection was to investigate the condition of the glulam wood beams framing the roof of the rear loading dock. The roof of the loading dock is comprised of three glulam beams, [nine feet-six inches apart], 15 feet long, running perpendicular to the face of the rear building wall." This description was reiterated in a letter, dated April 3, 1997, from a construction firm. A third inspection on April 7, 1997, resulted in a description that the "beams support[ed] the canopy on the referenced structure." These three descriptions indicate that the glulam beams were considered to form part of the roofing frame. Indeed, plaintiffs, in their cross-motion, state: "It is undisputed that the expense in question pertained to work performed in the 'wood beams framing the roof of the rear loading dock.'" Plfs' Br. filed Sept. 9, 1998, at 10.

Although plaintiffs contend that "[t]his was preventive maintenance, pure and simple," Plfs' Br. filed Oct. 16, 1998, at 6, the court need not reach the issue with regard to whether the work was routine maintenance or structural repair, because the lease explicitly allocated responsibility for repairs to the roof system to plaintiffs. Given that plaintiffs do not dispute responsibility for "all parts of the roof system," defendant's motion for summary judgment is granted on this ground. Accordingly,

**IT IS ORDERED**, as follows:

1. Plaintiffs' cross-motion for summary judgment is granted insofar as plaintiffs are entitled to recover the cost of the permit application fee, $875.10, as well as $8,246.25, representing the reasonable cost for attorneys' fees incurred in the course of performance. Plaintiffs' cross-motion is denied in all other respects.

2. Defendant's motion for summary judgment is granted to the extent that the Postal Service is not liable for the cost of repairs to the Frazier Park property and otherwise is denied.

3. Because the expenses associated with trial will far exceed the remaining sum in

---

4. Notably, in common parlance, a beam is defined as "a) a long, thick piece of wood, metal, or stone, used in building b) such a piece used as a horizontal support for a roof, [or] ceiling ...." *Webster's New World Dictionary of American English* 120 (3d ed.1988).

question, $661.86, the parties shall resolve this matter between themselves and submit a Joint Status Report by February 12, 1999, reflecting this resolution.