**KIMCO REALTY, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 98–736C.**

United States Court of Federal Claims.

Dec. 18, 2001.

Robert M. Calica, Rosenberg, Calica & Birney, LLP, Garden City, New York, for plaintiffs.

Evelyn M. Loeb, United States Postal Service, Washington, D.C., for defendant.

## OPINION

MARGOLIS, Senior Judge.

This contract action is before the Court on defendant's motion for summary judgment and plaintiffs' cross-motion for summary judgment. In the event that summary judgment is deemed inappropriate, the parties waived an evidentiary hearing and requested that the Court decide the issues upon the submitted pleadings. Plaintiffs filed suit seeking recovery of certain amounts plaintiffs allege are due and owing under a lease entered into with defendant. Defendant counterclaimed for reimbursement of taxes paid to plaintiffs that it now believes it did not owe. After full briefing and oral argument in the case, defendant's motion for summary judgment is **GRANTED** on the common area maintenance issue. Summary judgment is inappropriate on the building value tax issue. However, the Court finds for defendant on the merits on that issue.

### FACTS

Plaintiffs own and manage a shopping center, commonly known as the Centereach Mall ("shopping center"), located in the Town of Brookhaven, Suffolk County, New York. The United States ("defendant"), acting through the United States Postal Service, is a tenant in the shopping center pursuant to a ground lease with the original fee owner, Firstcent Shopping Center, Inc. ("Firstcent"). The defendant as tenant, and Firstcent as landlord, entered into the lease on March 13, 1984.

The Postal Service's leased parcel is 38,618 square feet ("SF"). The Postal Service originally intended to transfer and assign the ground lease to a non-governmental entity that would construct a postal facility on the leased premises and lease the building space back to the Postal Service. Instead, the Postal Service constructed the building itself. The building comprises 9,790 SF of the total space the Postal Service leases. Pursuant to the lease, all Postal Service vehicles are to be parked within the Postal Service's 38,618 SF of leased space. Employees and customers of the Postal Service, however, are permitted

to use the shopping center's general parking area at no extra cost to the defendant.

Plaintiff Centereach Mall Associates, L.P., acquired the shopping center through foreclosure in 1993, and is the successor-landlord pursuant to the lease. Plaintiff Kimco Realty Corporation operates and manages the shopping center on behalf of Centereach Mall Associates. The original lease expired on December 31, 1998. Defendant exercised the first five-year renewal option at that time. Since then, two disputes arose between the parties. First, the parties are in disagreement regarding the scope of defendant's payment obligations with respect to common area maintenance ("CAM") charges. Second, the parties disagree over whether the lease requires the defendant to reimburse plaintiffs for building value taxes. The specific facts relating to each dispute are discussed in turn.

### 1. The Common Area Maintenance Dispute

The Lease provisions at issue provide as follows:

33. It is mutually understood that the U.S. Postal Service will be responsible for their proportionate share of *all applicable* common area maintenance charges upon beneficial occupancy by the Postal Service. That amount begin [sic] agreed as three (3%) percent of *all costs*. Said costs shall include, but not limited to the following: general cleaning including maintenance personnel; snow removal, maintenance of lighting and cost of electricity; parking lot maintenance & stripping; maintenance of signs; landscaping & maintenance thereof; repair of curbing.*

(emphasis added). Lease ¶ 33, Pls' App. 25.

\*　　\*　　\*　　\*　　\*　　\*

\* See Paragraph 43 of Rider attached hereto.

Lease after ¶ 34, Pls' App. 25.

\*　　\*　　\*　　\*　　\*　　\*

43. The Common Area Maintenance charge will be billed to the Tenant on a monthly basis based upon the immediate prior year's total operating cost for said Common Area Maintenance, of which Tenant's three (3%) percent responsibility will be applied so that the 3% will be divided into 12 monthly payments and adjusted at the years' end up or down to reflect an accurate 3% of the current years' operating expenses for said maintenance. Tenant will be responsible for any and all general maintenance for the common area maintenance for his 38,618 [SF], which shall include, but is not limited to general cleaning including maintenance personnel; snow removal; maintenance of lighting and cost of electricity; parking lot maintenance and stripping[;] maintenance of signs; landscaping & maintenance thereof, and repair of curbing.[1]

Lease at ¶ 43, Pls' App. 28.

On or about November 4, 1997, plaintiffs sent defendant a demand for payment totaling $90,139.36. Plaintiffs claim the amount represents defendant's proportionate share of actual CAM charges for January 1, 1994 through January 31, 1997, and estimated CAM charges for February 1, 1997 through November 30, 1997. This figure equals 3% of the total CAM charges for the entire shopping center complex. Defendant replies that it is responsible for 3% of only those CAM charges attributable to the shopping center's commonly used "parking areas," not the entire shopping center, thus excluding CAM charges attributable to the shopping center buildings themselves. Defendant alleges that the original lessor, Firstcent, routinely billed defendant only for CAM charges relating to the parking lot. Defendant also points out that the building in which the Postal Service is located is a stand-alone building, and it is not necessary for patrons or employees to enter the other shopping center buildings in order to access the Post Office. On November 4, 1997, plaintiffs sent defendant a written request that the entire sum be paid. Pursuant to the Contract Disputes Act of 1978, the contracting officer denied plaintiffs' request by letter dated May

---

1. Lease paragraphs 36 through 46 are contained in the "Rider Attached to Lease Between Firstcent Shopping Center, Landlord and The United States Postal Service, Tenant," dated February, 1984. Pls' App. 27–29.

26, 1998. Plaintiffs appealed the decision to this Court.

## 2. The Real Estate Tax Reimbursement Dispute

The tax reimbursement issues also are based on the lease, which includes a tax rider entitled "Percentage Reimbursement of Paid Taxes Rider." The relevant portion of the original lease is paragraph 15, which states:

15. ... the tenant agrees to pay ... all municipal, county, and state taxes ... properly levied or assessed against the demised premises or the buildings or improvements thereon from and during the lease term and any renewal terms herein.

Lease ¶ 15, Pls' App. 23.

The relevant portions of the tax rider are paragraphs 1 and 5, which state:

1. ... From January 1, 1984 to the date of occupancy of the demised premises by the U.S. Postal Service, the Postal Service shall reimburse the Landlord three (3%) percent of the total General Real Estate Taxes attributed to land value, then from the date of the U.S. Postal Service's occupancy of the demised premises for the balance of this lease, including all renewal periods Postal Service shall reimburse the Landlord three (3%) percent of the total General Real Estate taxes attributed to land, buildings, and improvements.

\* \* \* \* \* \*

5. In the event the improvements constructed on the leased property are Government owned rather than leased,\* the U.S. Postal Service shall continue to be responsible for 3% of the total General Real Estate Taxes attributed to land value only after beneficial occupancy of the newly constructed Postal facility.

\*and all improvements are tax exempt[.]

Tax Rider ¶¶ 1, 5, Pls' App. 30.

As discussed above, defendant alleges that when it originally entered into the lease, the Postal Service intended to transfer and assign the ground lease to a non-governmental entity that would construct a postal facility on the leased premises and lease the building space back to the Postal Service. The Postal Service did not assign the lease and instead constructed the building itself. The parties agree that the government constructed the building. They also agree that the defendant "is responsible to reimburse Plaintiff 3% for the tax attributable to the building." Pls' Mot. 15. They disagree, however, on whether or not the building is government owned and tax exempt.

By letter to the contracting officer dated July 6, 1998, plaintiffs demanded from defendant reimbursement of real estate taxes due and owing pursuant to the lease. Plaintiffs determined that defendant's pro rata tax share is $36,294.46. In his January 26, 1999 final decision, the contracting officer denied plaintiffs' tax claim. In addition, the contracting officer demanded from plaintiffs repayment of $27,080 in erroneously paid taxes. Pursuant to the contracting officer's final decision, defendant filed a counterclaim with this Court.

Defendant claims that plaintiffs billed, and the Postal Service paid, $27,080 in building value tax reimbursement for tax year 1994/95. Defendant asserts that the Post Office building is tax exempt and that defendant erroneously overpaid plaintiffs by including the $27,080 building value tax payment with its land value tax reimbursement for that tax year. Plaintiffs dispute both that it owes defendant money, and that the building is tax exempt. To support its argument, plaintiffs point out that the tax bills it attached to its motion make no reference to an exemption. Defendant responds that the town tax assessor, James Ryan, considers the Post Office building to be tax exempt. In addition, in his May 25, 2000 and February 1, 2001 depositions, Ryan testified that in negotiating a tax settlement between plaintiffs and the Town of Brookhaven, he did not include the Post Office building in the shopping center's settled assessed value.[2] Ryan Dep., Pls' App. 111, 125. Thus, defendant argues, it erroneously paid plaintiffs the

---

2. On May 5, 1997, plaintiffs entered into a settlement with the Town of Brookhaven in a tax certiorari proceeding that plaintiffs filed. Pls' App. 75–76. The settlement covered tax years 1991/92 through 1996/97. Id.

$27,080 in relation to the Post Office building.

On December 10, 1999, plaintiffs amended the complaint to appeal the contracting officer's decision that rejected plaintiffs' tax claim and demanded reimbursement from the Postal Service. Plaintiffs deny owing defendant $27,080 and claim that defendant owes them $36,294.46 in tax reimbursements. Defendant asserts that before plaintiffs can receive a building tax reimbursement from defendant, plaintiffs must show that the Post Office building was in fact taxed and that plaintiffs paid those taxes.

## DISCUSSION

### I. *Common Area Maintenance Issue*

The lease in this matter is ongoing. Accordingly, the parties request that the Court determine the scope of defendant's obligation with respect to the "common area maintenance charges" called for in the lease. The parties agree that the lease requires that defendant pay 3% of CAM charges. The parties dispute whether defendant is responsible for 3% of all CAM charges for the entire shopping center or 3% of those CAM charges pertaining to the parking lot only.

### A. *Standard for Summary Judgment*

Rule 56(c) states that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c). There are no disputed issues as to any material facts relating to the CAM issue, rendering summary judgment appropriate. The question regarding this issue is one of lease interpretation. "As a general proposition, although a lease may concern and convey a property interest, it is very much a contract." *Corman v. United States*, 26 Cl.Ct. 1011, 1015 (1992). Contract interpretation is a question of law, which is suited to determination by summary judgment. *Metric Constructors, Inc. v. United States*, 44 Fed.Cl. 513, 520 (1999).

### B. *Contract Interpretation*

Contract interpretation begins with the contract's plain language. *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed.Cir. 1991). A contract's words "are deemed to have their ordinary meaning appropriate to the subject matter ...." *Lockheed Martin IR Imaging Sys., Inc. v. West*, 108 F.3d 319, 322 (Fed.Cir.1997). Courts should construe a contract's provisions so as to " 'effectuate [the contract's] spirit and purpose,' " such that " 'an interpretation which gives a reasonable meaning to all of its parts will be preferred to one which leaves a portions of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result.' " *Gould*, 935 F.2d at 1274 (quoting *Arizona v. United States*, 216 Ct.Cl. 221, 575 F.2d 855 (1978)); *see also Corman*, 26 Cl.Ct. at 1015 (court must not interpret contract provision so as to create conflict with another provision). All contract terms must be accorded a reasonable meaning. *Lockheed Martin*, 108 F.3d at 322. A contract is unambiguous if it is susceptible to only one reasonable interpretation. *Goldsmith v. United States*, 42 Fed.Cl. 664, 668 (1999). When a contract's language is unambiguous, the court's inquiry is at an end, and the contract's plain language controls. *Id.*

The contract's pertinent CAM provisions are stated above. The Court's interpretation begins with the plain language of those lease provisions. Plaintiffs argue that terms within lease paragraphs 33 and 43 oblige defendant to pay its proportionate share of " '*all costs*' for all common area maintenance," which plaintiffs define as "all maintenance services provided to the entire shopping center in general." Pls' Mot. at 7, 8. On the other hand, defendant argues that it is only responsible for its share of "all *applicable* CAM charges." Def's Mot. at 15. Defendant asserts that this terminology limits its obligation to those charges associated only with parking lot maintenance.

The disputed terms must be read such that they are given their ordinary meaning within the context of a lease. *See Lockheed Martin*, 108 F.3d at 322. "Common area" means the portion of the leased premises that all ten-

ants may use and over which the landlord retains control and responsibility. Thus, the CAM charges to which the lease refers are the costs of maintaining those areas to which all shopping center tenants have access and use. At first glance, it seems that the charges would include, as plaintiffs claim, the cost of maintaining all common areas within the entire shopping center. Additionally, referring to defendant's responsibility for its share of CAM charges, the second sentence in lease paragraph 33 reads: "That amount begin [sic] agreed as three (3%) percent of all costs." Plaintiffs contend that this means defendant is responsible for 3% of all CAM charges. This interpretation, however, fails to take into account use of the word "applicable" in the previous sentence. It also fails to account for lease paragraph 43's reference to defendant's CAM responsibility and its relation to defendant's 38,618 SF of leased space.

In a contract interpretation, all terms must be given reasonable meaning. *Lockheed Martin*, 108 F.3d at 322. Thus, the word "applicable" and the 38,618 SF reference cannot be ignored. Likewise, an interpretation that gives relevance to all provisions and terms is preferred to one that leaves certain provisions and terms " 'useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result.' " *Gould*, 935 F.2d at 1274 (quoting *Arizona v. United States*, 216 Ct.Cl. 221, 575 F.2d 855 (1978)). The Court's indulgence of plaintiffs' interpretation would leave useless the word "applicable," which means pertinent, relevant, appropriate, or that which can be applied. Likewise, the reference to defendant's 38,618 SF in relation to its CAM responsibility would be rendered meaningless. Some force and effect must be given to both terms.

In the context of the lease, "applicable" refers to those CAM charges that are relevant to defendant. This can only mean that, contrary to plaintiffs' argument, the use of the word "applicable" limits the term "all" such that defendant is only responsible for 3% of those CAM charges pertaining to it. This argument is bolstered by lease paragraph 43, which states that defendant is responsible for the CAM "for his 38,618."

Lease ¶ 43. The 38,618 equals the square footage of defendant's leased ground space. The lease phrase refers to the CAM related to defendant's leased space. The only space used by defendant in relation to its leased plot is the parking lot.

The lease states that CAM costs include, but are not limited to: "general cleaning including maintenance personnel; snow removal, maintenance of lighting and cost of electricity; parking lot maintenance and stripping; maintenance of signs; landscaping & maintenance thereof; repair of curbing." Lease ¶ 33. This list appears to refer to performance of those maintenance services relating to the parking lot only. Defendant's interpretation—that it is only responsible for 3% of the CAM charges that relate to its use of the shopping center property—gives meaning to the language of the entire lease. Thus, defendant is responsible for 3% of the CAM charges relating to the parking lot only.

## II. *Tax Issues*

The parties are generally in agreement with respect to the legal issues before the Court on the tax issues. First, the Court must decide whether the lease requires the Postal Service to reimburse plaintiffs for building value taxes. If not, the Court must decide whether the Postal Service has a right to reimbursement from plaintiffs for the building value tax portion of payments it submitted to plaintiffs. Whether the Post Office building is tax exempt is an issue of material fact underlying the dispute, which makes it inappropriate for summary judgment. However, the parties stipulated that the Court decide the issues based on the parties' proposed findings of fact and other pleadings in lieu of an evidentiary hearing.

### A. *Building Value Taxes*

### 1. *Contract Interpretation*

■ As discussed above, the parties are in disagreement over whether the building is tax exempt. Defendant asserts that it is entitled to a refund of paid building value taxes because plaintiffs cannot show that the Post Office building was taxed, nor that

they paid real estate taxes on the building. Defendant therefore asserts that it is responsible for 3% of land value taxes only. Plaintiffs assert that the building is not tax exempt and that defendant properly paid and currently owes plaintiffs building value tax reimbursements.

The Court must look first at the lease's plain language to determine the parties' responsibilities thereunder. *See generally Gould*, 935 F.2d 1271. The applicable lease language is in lease paragraph 15 and rider paragraphs 1 and 5, as quoted above. A straight forward reading of paragraph 15 suggests that defendant is responsible for paying all taxes assessed against both the leased parcel and any improvements or buildings thereon. Rider paragraph 1 states that the defendant is responsible for reimbursing the plaintiffs 3% of the "total Real Estate taxes attributed to land, buildings, and improvements." Tax Rider ¶ 1, Pls' App. 30. This paragraph is limited by the language in rider paragraph 5, which states that if defendant owns rather than leases the improvements, and the improvements are tax exempt, then defendant shall reimburse plaintiffs for 3% of general real estate taxes attributed to land only.

Paragraph 15, as quoted above, defines defendant's general responsibility for taxes assessed against the demised property. The rider prescribes the manner of determining how much defendant owes each period of the lease. Because it appears from the submitted tax bills that the shopping center is assessed as a whole, rather than plot by plot, tax responsibilities had to be determined in proportion to each lessee's amount of occupied land. A reasonable interpretation of the lease language establishes that defendant's ultimate responsibility is for tax reimbursement. Defendant's leased property is 3% of the entire shopping center land. Thus, defendant is responsible for reimbursing plaintiffs for 3% of those taxes that include the Post Office property. However, Brookhaven tax assessor, James Ryan, testified that he did not include the Post Office building in his tax assessment. Thus, because the town did not tax plaintiffs on the Post Office building, there are no taxes paid by plaintiffs for which defendant needs to reimburse plaintiffs. Defendant is therefore responsible for 3% of the land taxes only.

### 2. *Contract Application*

The tax rider specifically provides that the defendant must reimburse plaintiffs for 3% of all building and land taxes assessed on the Centereach shopping center unless the Post Office building is (1) government owned and (2) tax exempt. If the building is government owned and all improvements are tax exempt, the defendant is responsible for 3% of real estate taxes attributed to the Centereach land only. Plaintiffs argue for a strict reading of rider paragraph 5 and seek to apply legal definitions to the terms "government owned" and "tax exempt." Pls' Mot. 12, 14–15. In support of their claim, plaintiffs cite case law defining property ownership and argue that in order to be tax exempt, defendant must have affirmatively sought an exemption.

The parties' argument over the legal definitions of ownership and tax exempt with respect to the property is moot. The issue is in fact much simpler. As interpreted above, the defendant must only reimburse plaintiffs for taxes paid on the Post Office property. The issue turns on whether the building is *de facto* tax exempt. According to James Ryan, who assessed the Centereach shopping center, the Post Office building was exempted from the tax assessment for tax years 1991/92 up to and including tax years 1996/97. Because the building was not taxed, plaintiffs made no payments on the building's value for which it should be reimbursed by defendant. Therefore, defendant is responsible for reimbursing plaintiffs for 3% of the land value taxes only, which include the Post Office parcel. Defendant thus overpaid plaintiffs $27,080 in taxes for the Post Office building. However, plaintiffs' claim for $36,294.46 includes both land and building value taxes. The portion attributable to building value taxes must be subtracted from $36,294 .46 to determine the amount defendant owes plaintiffs for land value taxes.

### B. *Recoupment*

The parties disagree on the applicable law in this case. Defendant argues that fed-

eral law controls government leases. Plaintiffs claim that there is no federal law on point, and thus New York state law is controlling. The Federal Circuit, which binds this Court, addressed the choice of law with respect to Postal Service leases. The Federal Circuit declared that federal common law applies to Postal Service leases. *Forman v. United States,* 767 F.2d 875, 879 (Fed.Cir. 1985); *see also Kelley v. United States,* 19 Cl.Ct. 155, 162 (1989) (treating government lease as subject to federal contract law).

The Federal Circuit reaffirmed this decision with respect to all government leases in *Prudential Ins. Co. of America v. United States,* 801 F.2d 1295, 1298 (Fed.Cir.1986). The Federal Circuit stated that government contracts, which include government leases, are normally governed by federal, not state law. *Id.* It further noted: "Leases are not sufficiently different from other federal contracts to call for an independent set of analytical principles and rules." *Id.* (citations omitted).[3]

■ The issue of recoupment under this lease is controlled by both federal statutory and common law. Thus, New York state law is inapplicable to recoupment determination. "The Postal Service shall request the Attorney General to bring a suit to recover with interest any payment made from moneys of, or credit granted by, the Postal Service as a result of—(1) mistake ...." 39 U.S.C. § 2605 (2001). Here, defendant paid plaintiffs building value taxes, which it did not owe because the Post Office building was exempted from the tax assessment. Thus, under the statute, the Postal Service not only has a right but a duty to recover those erroneously paid monies.

Federal common law also addresses government recoupment of erroneously paid taxes. In *Wright Runstad Props. Ltd. P'ship v. United States,* 40 Fed.Cl. 820, 827 (1998), the Court of Federal Claims stated that the government has inherent authority to recover erroneously paid monies. In that case, like this one, the government, as lessee, reimbursed the lessor for both real estate taxes and a special tax assessed on the property. Pursuant to payment, the government realized that it was not obligated under the lease to reimburse lessor for the special tax, but was responsible under the lease for only real estate taxes. *Id.* at 822. The Court declared that because the payment was erroneous, "the government has not only the right but the duty to recover the payment and it cannot be estopped from doing so." *Id.* at 827.

Because the Postal Service, like the defendant in *Wright Runstad,* reimbursed plaintiffs for taxes it did not owe, it has a right to recover those payments. Plaintiffs must refund defendant the $27,080 paid on building value taxes, plus interest.

### CONCLUSION

For the foregoing reasons, the Court GRANTS defendant summary judgment on the CAM issue. The parties are to determine those CAM charges applicable to the Postal Service and the 3% portion owed by defendant to plaintiffs. The Court finds that plaintiffs must reimburse defendant $27,080, plus interest from a date determined by the parties. The parties are to determine the portion of the $36,294 .46 that covers land value taxes only for which defendant is responsible. The parties are hereby ORDERED to file a stipulation for all damages with the Court by January 25, 2002.

---

**3.** The Federal Circuit qualified this statement by noting that to the extent that federal law determinative of the issue does not exist and a choice of law may be made, "the best in modern decision and discussion, including the general principles of contract and landlord-tenant law, should be taken into account." *Prudential Ins. Co.,* 801 F.2d at 1298. The Court of Federal Claims followed this determination. *See Allenfield Assocs. v. United States,* 40 Fed.Cl. 471, 481 (1998) (applying state law to government lease because there was no federal common law determinative of the specific issues). Plaintiffs assert that in accord with these two cases, state law should be applied in this instance. In making such an argument, plaintiffs fail to recognize federal cases on point.