NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-5181

KIMCO REALTY CORPORATION
and
CENTEREACH MALL ASSOCIATES, L.P.,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  June 30, 2006

_____

Before MICHEL, <u>Chief Judge</u>,  PLAGER, <u>Senior Circuit Judge</u>, and BRYSON, <u>Circuit Judge</u>.

BRYSON, <u>Circuit Judge</u>.

Kimco Realty Corporation and Centereach Mall Associates, L.P., (collectively "Kimco") appeal from a decision of the United States Court of Federal Claims in a case involving the government's obligations under a lease agreement.  <u>Kimco Realty Corp. v. United States</u>, No. 98-736C.  Kimco, the landlord, alleged that the government, the tenant, owed additional funds under two provisions of the lease—one for common area maintenance ("CAM") charges and the other for reimbursement of building-value taxes. The Court of Federal Claims granted the government's motion for summary judgment

on the CAM charges issue. On the tax reimbursement issue, the court ruled for the government after a trial on the documentary record. Because we conclude that the court properly interpreted the provisions of the lease pertaining to tax reimbursement and did not commit clear error in the findings it made based on the evidence relating to that issue, we affirm that portion of the court's judgment. However, because we conclude that the lease is ambiguous with regard to the issue of the CAM charges, we vacate the summary judgment on the CAM charges issue and remand for further proceedings on that portion of the trial court's judgment.

I

Kimco owns and manages a shopping center in the Town of Brookhaven, New York. The United States Postal Service is a tenant in the shopping center, pursuant to a ground lease that the Postal Service entered into in 1984 with the original fee owner, Firstcent Shopping Center, Inc. In 1993, Centereach Mall Associates, L.P., acquired the shopping center through foreclosure and is now the successor-landlord to the lease. Kimco Realty Corporation operates and manages the shopping center on behalf of Centereach Mall Associates.

The Postal Service's leased parcel consists of 38,618 square feet. Although it originally intended to transfer and assign the ground lease to a non-governmental entity for construction of a post office, the Postal Service ultimately constructed the building itself. The post office building covers 9,790 square feet of the leased space.

Two disputes have arisen between Kimco and the government. First, the parties disagree about the scope of the government's payment obligations for CAM charges. The government contends that its responsibility is limited to three percent of the CAM

charges for the shopping center's general parking area. Kimco, on the other hand, asserts that the government is responsible for three percent of the CAM charges attributable to the entire shopping center. Second, the parties disagree about whether the government is required, under the terms of the lease, to reimburse Kimco for a portion of the building-value taxes Kimco has paid.

With regard to the CAM charges, the lease provides:

> It is mutually understood that the U.S. Postal Service will be responsible for their proportionate share of <u>all applicable common area maintenance charges</u> . . . . That amount begin [sic] agreed as <u>three (3%) percent of all costs</u>. Said costs shall include, but not limited to the following: general cleaning including maintenance personnel; snow removal, maintenance of lighting and cost of electricity; parking lot maintenance & stripping; maintenance of signs; landscaping & maintenance thereof; repair of curbing.

Lease, ¶ 33 (emphasis added). In addition, the lease states:

> Tenant will be responsible for <u>any and all general maintenance for the common area maintenance for his 38,618 [square feet]</u>, which shall include, but is not limited to general cleaning including maintenance personnel; snow removal, maintenance of lighting and cost of electricity; parking lot maintenance & stripping; maintenance of signs; landscaping & maintenance thereof; repair of curbing.

<u>Id.</u>, ¶ 43 (emphasis added).

With regard to tax reimbursement, the lease provides that "the tenant agrees to pay . . . all municipal, county, and state taxes . . . that may be properly levied or assessed against the demised premises or the buildings or improvements thereon. <u>Id.</u>, ¶ 15. Specifically the lease provides:

> From January 1, 1984 to the date of occupancy of the demised premises by the U.S. Postal Service, the Postal Service shall reimburse the Landlord three (3%) percent of the total General Real Estate Taxes attributed to land value, then from the date of the U.S. Postal Service's occupancy of the demised premises for the balance of this lease, . . .

05-5181                                    3

Postal Service shall reimburse the Landlord three (3%) percent of the total General Real Estate taxes attributed to land, buildings, and improvements.

Percentage Reimbursement of Paid Taxes Rider, ¶ 1. The lease qualifies that obligation, however, by providing as follows:

In the event the improvements constructed on the leased property are government owned rather than leased,* the U.S. Postal Service shall continue to be responsible for 3% of the total General Real Estate Taxes attributed to land value only after beneficial occupancy of the newly constructed Postal facility. (*and all improvements are tax exempt)

Id., ¶ 5.

On the issue of CAM charges, the trial court granted summary judgment in favor of the government. The court explained that Kimco's interpretation of the lease "fail[ed] to take into account use of the word 'applicable' . . . [and] . . . fail[ed] to account for lease paragraph 43's reference to [the government's] CAM responsibility and its relation to [the government's] 38,618 [square feet] of leased space." According to the court, "the use of the word 'applicable' limits the term 'all' such that [the government] is only responsible for 3% of those CAM charges pertaining to it." The court added that its conclusion was "bolstered by lease paragraph 43, which states that [the tenant] is responsible for the CAM 'for his 38,618.'" In addition, the court noted that the examples of CAM costs listed in paragraph 33 "appear[ ] to refer to performance of those maintenance services relating to the parking lot only." The court therefore concluded that the government is responsible only for three percent of the CAM charges relating to the shopping center's parking lot.

On the issue of tax reimbursement, the court observed that the parties were "in disagreement over whether the building is tax exempt" but concluded that the "issue is

in fact much simpler."[1]  The court explained that James Ryan, the assessor for the Town of Brookhaven, stated in his deposition that the post office building had been exempted from tax assessment.  The court therefore reasoned that "[b]ecause the building was not taxed, [Kimco] made no payments on the building's value for which it should be reimbursed by the [government]."  Accordingly, the court concluded that the government "is responsible for reimbursing [Kimco] for 3% of the land value taxes only."  The court further found that the government had overpaid $27,080 to Kimco and that the government was entitled to recover the payments it had made for taxes it did not owe.  Kimco appealed from both aspects of the court's judgment.

II

On the tax reimbursement issue, Kimco rests its argument on its assertion that under New York law the post office building is not tax exempt.  For that reason, according to Kimco, the government is required to pay three percent of the total tax obligation for the entire shopping center.  The trial court, however, concluded that the evidence showed that the post office building was not in fact taxed and therefore must be treated as tax exempt for purposes of calculating the government's tax obligations under the lease.

Two provisions of the lease are particularly pertinent.  First, paragraph 15 of the lease provides that the government must pay only those taxes "properly levied or assessed against the demised premises or the buildings or improvements thereon."

---

[1]  The court determined that the tax reimbursement issue was not appropriate for summary judgment, but it noted that "the parties stipulated that the Court decide the issues based on the parties' proposed findings of fact and other pleadings in lieu of an evidentiary hearing."

Second, although paragraph 1 of the "Percentage Reimbursement of Paid Taxes Rider" to the lease states that the government will be obligated to reimburse the landlord for three percent of "the total General Real Estate taxes attributed to land, buildings, and improvements," paragraph 5 of that rider provides that, if the improvements constructed on the leased property are government owned and tax exempt, the Postal Service is responsible for only "3% of the total General Real Estate Taxes attributable to land value only." Thus, if the government-owned post office building is tax exempt, the government's lease obligation is limited to a percentage of the taxes on the shopping center land only, not a percentage of all the taxes on the land, buildings, and improvements at the shopping center.

The trial court found that the post office building was tax exempt. In making that finding, the court relied on the deposition of the town tax assessor, who testified that the post office building was not included in his tax assessment. The trial court reasoned that "because the town did not tax plaintiffs on the Post Office building, there are no taxes paid by [Kimco] for which [the government] needs to reimburse [Kimco]." That is, because the court found that the post office building was tax exempt, it held that the government's tax obligation was limited to the amount set forth in paragraph 5 of the tax rider to the lease.

The trial court's decision on the tax reimbursement issue rested on the evidence submitted to it. Although Kimco challenged that evidence at trial and continues to do so on appeal, the evidence came from a competent source and could properly be credited by the court. Because the court did not commit clear error in relying on that evidence, we affirm the court's decision that the post office building was tax exempt and that the

government therefore owed Kimco three percent of the tax obligation for the shopping center land only, and not three percent of the total tax obligation for the shopping center land, buildings, and improvements. Accordingly, we uphold the trial court's ruling with regard to the tax reimbursement issue.

III

With respect to the CAM charges issue, the lease does not define the terms "common area" or "common area maintenance." In particular, it does not expressly restrict those terms to refer to the shopping center parking lot. Thus, as the trial court acknowledged, "[a]t first glance, it seems that the [CAM] charges would include, as [Kimco] claim[s], the cost of maintaining all common areas within the entire shopping center."

Despite the apparent breadth of the term "common area maintenance," the trial court concluded that the lease unambiguously limits the government's CAM charge obligation to paying three percent of the common area maintenance charges for the shopping center parking lot. In reaching that conclusion, the court relied, first, on the use of the word "applicable" in paragraph 33 of the lease. That paragraph provides that the Postal Service "will be responsible for their proportionate share [three percent] of all applicable common area maintenance charges." The court concluded that the term "applicable" defines a subset of all common area maintenance charges, and that the Postal Service's three percent share must relate to less than all the common area maintenance charges for the entire shopping center. While that is a plausible interpretation of the term "applicable," it is not the only possible interpretation. The term could be interpreted to refer to the particular types of charges set forth in the lease,

without specific limitation to the common area maintenance charges pertaining to the parking lot. Under that interpretation, paragraph 33 of the lease would require the government to pay three percent of the CAM costs for all non-leased portions of the shopping center.

The trial court also found that the clause in paragraph 43 of the lease providing that the tenant "will be responsible for any and all general maintenance for the common area maintenance for his 38,618 [square feet]" supports a narrow interpretation of the phrase "all applicable common area maintenance charges" in paragraph 33. The court viewed that language as indicating that the tenant would be responsible for the CAM charges "related to the [tenant's] leased space." Because the court concluded that the "only space used by the [tenant] in relation to its leased plot is the parking lot," the court considered paragraph 43 as providing support for the government's submission that its CAM charge obligation was limited to charges associated with the parking lot.

We disagree with the trial court's interpretation of the language from paragraph 43. We interpret that language as meaning simply that the government is responsible for <u>all</u> the common area maintenance services for its 38,618 square foot plot. Under our interpretation of paragraphs 33 and 43, when read together, the government is responsible for <u>all</u> CAM charges pertinent to its leased area and, in addition, for three percent of "all applicable common area maintenance charges" pertaining to common areas outside of its leased space. That interpretation would appear to support Kimco's argument that the term "common area maintenance charges" refers to the charges for all areas within the shopping center that are not leased to particular tenants.

In further support of its restrictive interpretation of the disputed lease language, the trial court held that the specific examples of CAM costs listed in paragraphs 33 and 43 "appear[ ] to refer to performance of those maintenance services relating to the parking lot only." That is, the court invoked the rule of ejusdem generis and concluded that the CAM charges relate only to parking lot maintenance.

We do not agree that the principle of ejusdem generis applies here. It is not clear that services such as "general cleaning," "maintenance of lighting and cost of electricity," and "maintenance of signs" are pertinent only to a parking lot; any one of those services is likely to be needed in other common areas of the shopping center. Consequently, that language does not resolve the ambiguity of the lease, because it does not establish that the government's responsibility to Kimco is limited to three percent of the CAM charges that relate to the parking area.

It is well established that "if more than one meaning is reasonably consistent with the contract language it can not be deemed unambiguous." C. Sanchez & Son, Inc. v. United States, 6 F.3d 1539, 1544 (Fed. Cir. 1993). Moreover, "[t]o the extent that the contract terms are ambiguous, requiring weighing of external evidence, the matter is not amenable to summary resolution." Beta Sys. v. United States, 838 F.2d 1179, 1183 (Fed. Cir. 1988) (citing Samuel Williston, A Treatise on the Law of Contracts § 616, at 649, 652 (3d ed. 1961)). Based on its analysis of the contract language, the trial court concluded that the contract unambiguously obligated the government to pay three percent of the CAM charges relating to the parking lot only, and on that ground the court granted the government's motion for summary judgment. Because we are unable to agree with the court's conclusion that the contract unambiguously supports that

interpretation, we reverse the grant of summary judgment for the government on the CAM charge issue.

Kimco urges us not only to reverse the district court's grant of summary judgment to the government on the CAM charge issue, but to go further and direct the entry of summary judgment for Kimco. We decline to do so. The only question before us on the appeal of the CAM charges issue is the propriety of the summary judgment granted to the government. While an appellate court, in an appeal from the grant of summary judgment for the appellee, may direct the entry of summary judgment for the appellant, such a step is an unusual one that is reserved for circumstances in which the outcome is not in doubt and no useful purpose would be served by further proceedings on remand. See Lighting World, Inc. v. Birchwood Lighting, Inc., 382 F.3d 1354, 1366 (Fed. Cir. 2004); Conoco, Inc. v. Dep't of Energy, 99 F.3d 387, 394-95 (Fed. Cir. 1996); Jewelers Vigilance Comm., Inc. v. Ullenberg Corp., 853 F.2d 888, 890 n.2 (Fed. Cir. 1988); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2720, at 355 (1998).

In this case, the proper resolution of the lease interpretation issue is not so clear as to justify our taking the unusual step of deciding the case on the merits without remanding it for the trial court to decide in the first instance. For one thing, it is not clear from the record before us just what portions of the shopping center constitute non-leased, common areas that are not included within the parking lot, and what sorts of maintenance services are required for those areas. That factual question may affect the way the trial court construes the lease. A further reason counseling against our directing the entry of judgment for Kimco without further proceedings in the trial court is

that the record below contains at least some parol evidence supporting the government's interpretation of the CAM charge provisions of the lease. In its summary judgment papers, the government proffered an affidavit from a Postal Service employee who asserted that he negotiated the lease and that "[i]t was the Postal Service's understanding when it accepted the lease that it would only have to pay 3% of the CAM attributable to the parking lot areas only, not for the entire mall property." Declaration of Nicholas J. Menchise in Support of Defendant's Motion for Summary Judgment, ¶ 12. Because the trial court found the lease language to be unambiguous, it had no occasion to consider that evidence. On remand, however, the trial court may determine that such parol evidence is pertinent to the proper interpretation of the contract language. We therefore decline Kimco's invitation to direct the entry of judgment in its favor on the CAM charges issue. Instead, we vacate the trial court's grant of summary judgment with regard to the question of CAM charges and remand for further proceedings on that issue.

Each party shall bear its own costs for this appeal.