**Slip Op. 05-24**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

```
_____
                                    :
United States,                      :
                                    :
     Plaintiff,                     :
                                    :            Court No.
     v.                             :            02-00106
                                    :
Ford Motor Company,                 :
                                    :
     Defendant.                     :
_____:
```

The United States Bureau of Customs and Border Protection of the Department of Homeland Security ("Customs"), plaintiff, seeks to collect civil penalties and customs duties concerning certain merchandise imported by Ford Motor Company ("Ford"), defendant, in violation of 19 U.S.C. § 1592 (1988). Customs moves pursuant to USCIT R. 56 for summary judgement on the prior disclosure and statute of limitations defenses raised by Ford. Customs also moves pursuant to USCIT R. 12 to dismiss Ford's counterclaim, which seeks a refund of certain duties tendered in connection with this matter.

**Held**: Customs' motion for summary judgment on the prior disclosure and statute of limitations defenses and to dismiss counterclaim is denied.

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (David A. Levitt and Michael Panzera); of counsel: Jeffrey E. Reim and Katherine Kramarich, United States Bureau of Customs and Border Protection, for the United States, plaintiff.

Grunfeld, Desiderio, Lebowitz, Silverman, & Klestadt, LLP (Steven P. Florsheim, Robert B. Silverman, David M. Murphy, and Frances P. Hadfield); of counsel: Paulsen K. Vandevert, Ford Motor Company, for Ford Motor Company, defendant.

Dated : February 18, 2005

## OPINION AND ORDER

**TSOUCALAS, Senior Judge:**  The United States Bureau of Customs and Border Protection of the Department of Homeland Security ("Customs"),[1] plaintiff, seeks to collect civil penalties and customs duties concerning certain merchandise imported by Ford Motor Company ("Ford"), defendant, in violation of 19 U.S.C. § 1592 (1988).[2]  Customs moves pursuant to USCIT R. 56 for summary judgement on the prior disclosure and statute of limitations defenses raised by Ford.  Customs also moves pursuant to USCIT R. 12(b) to dismiss Ford's counterclaim seeking a refund of certain duties tendered in connection with this matter.

## BACKGROUND

On October 25, 2004, Customs moved for summary judgement on the prior disclosure and statute of limitations defenses raised by Ford.  Customs also moved to dismiss Ford's counterclaim for failure to state a claim upon which relief can be granted.[3]  See

---

[1]     The United States Customs Service was renamed the Bureau of Customs and Border Protection of the Department of Homeland Security, effective March 1, 2003.  See H.R. Doc. No. 108-32 (2003).

[2]     Customs seeks $184,495 in unpaid duties and civil penalties in the amount of $21,314,111 if Ford's conduct is found to be fraudulent; $3,497,080 if Ford was grossly negligent; or $1,748,540 if Ford was negligent.  See Complaint.

[3]     Customs mistakenly filed its motion pursuant to USCIT R. 12(b)(6).  See Customs' Mot. at 1.  USCIT R. 12(b)(6), however, is

Pl.'s Mot. Summ. J. Prior Disclosure Statute Limitations Defenses Dismiss Countercl. ("Customs' Mot.").  Ford responded on December 13, 2004.  See Def.'s Resp. Pl.'s Mot. Summ. J. Prior Disclosure Statute Limitations Defenses Dismiss Countercl. ("Ford's Resp.").  Parties then submitted a joint pretrial order on January 5, 2005.  See Pretrial Order.  Customs submitted its reply on January 11, 2005.  See Pl.'s Reply Support Mot. Partial Summ. J. Mot. Dismiss Countercl..  Finally, Ford, with leave from the Court, submitted a sur-reply on January 14, 2005.  See Def.'s Sur-Reply  Pl.'s Reply Mot. Summ. J..  The Court heard oral arguments from the parties on February 7, 2005.

Ford has waived the statute of limitations defense.  See Ford's Resp. at 1.  Thus, the remaining issues are whether Ford fulfilled the requirements for prior disclosure status and whether Ford's counterclaim has any merit.  The Court denied Customs' motion at the close of oral arguments on February 7, 2005.  This opinion elaborates the Court's bench ruling.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1582 (2000).  Jurisdiction over Ford's counterclaim is

---

failure to join a party under R. 19.  Although styled under USCIT R. 12(b)(6), the Court will treat Customs' motion as filed pursuant to its proper provision, USCIT R. 12(b)(5).

based on 28 U.S.C. §§ 1583 and 1585 (2000).

**STANDARD OF REVIEW**

On a motion for summary judgment, the Court must determine whether there are any genuine issues of fact that are material to the resolution of the action. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is genuine if it might affect the outcome of the suit under the governing law. See id. A genuine dispute for trial exists only if there is evidence from which a reasonable jury could return a verdict for the non-moving party. See id. Accordingly, the Court may not decide or try factual issues upon a motion for summary judgment. See Phone-Mate, Inc. v. United States, 12 CIT 575, 577, 690 F. Supp. 1048, 1050 (1988). When genuine issues of material fact are not in dispute, summary judgment is appropriate if the moving party is entitled to judgment as a matter of law. See USCIT R. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The burden of demonstrating an absence of genuine disputes as to material facts is on the moving party. See Celotex, 477 U.S. at 323. Once that burden is discharged, the non-moving party has the burden of showing specific facts in dispute. See id.

The Court may dismiss a counterclaim for failure to state a claim only "where it appears beyond doubt that plaintiff can prove

no set of facts which will entitle him to relief." Constant v. Advanced Micro-Devices, Inc., 848 F.2d 1560, 1565 (Fed. Cir. 1998) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Moreover, the Court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. See United States v. Islip, 22 CIT 852, 854, 18 F. Supp. 2d 1047, 1051 (1998) (citing Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)). A plaintiff is only required to set out in detail the facts upon which the claim is based so that the defendant has "fair notice of what his claim is and the grounds upon which it rests." Conley, 355 U.S. at 47. The particular relief requested is not required to be available, as long as the Court can ascertain that some relief is available. See NEC Corp. v. United States, 20 CIT 1483, 1485, 967 F. Supp. 1305, 1307 (1996).

**DISCUSSION**

**I. Uncontested Facts**

Ford, the importer on record, and through its customs broker, J.V. Carr, Inc., made eleven entries of dutiable merchandise ("Complaint Entries") between February 2, 1989, and March 12, 1989.[4] See Customs' Mot. at 2. The Complaint Entries consisted of dies, checking fixtures, welding equipment, and accessories

---

[4] The eleven entries and their ports of entry are listed in Exhibit A of the Complaint.

purchased from Ogihara Iron Works, Ltd. of Japan ("OIW") through its subsidiary, Ogihara America Corporation ("OAC") (collectively, "Ogihara"), to manufacture and assemble parts in Ford's FN-36 program ("FN-36").[5]  See Pretrial Order, Schedule C at ¶¶ 3-4; Ford's Resp. at 5 n.5.  The entered value of the Complaint Entries was $63,078,426.  See Pretrial Order, Schedule C at ¶ 10.  Ford issued an original purchase order, also called the "base tool order," to OIW in May 1987.  See id. at ¶ 3.  Ford then issued 17 purchase order amendments to the base tool order and "over 200 separately numbered purchase orders for engineering changes and other price adjustments."  Id. at ¶ 6.  These amendments were issued between May 1987 and January 1991 modifying the purchase order price from $42,544,844 to $66,075,960.  See id. at ¶ 12.

In 1989, various requests for information (referred to as "CF 28")[6] were issued from the Seattle and Detroit District Customs offices about FN-36 entries.[7]  Ford responded to the Detroit CF 28 on November 20, 1989, and included copies of the original purchase

_____

[5]    "FN-36" was Ford's program code for the 1990 model year Lincoln Town Car.  See Pretrial Order, Schedule C at ¶ 2.

[6]    Ford describes the CF 28s as routine requests for information which they respond to regularly from various Customs ports each year.  See Ford's Resp. at 7.

[7]    The CF 28s dated February 9, 1989, and March 2, 1989, are from Seattle and the CF 28 dated March 28, 1989, is from Detroit. See Pretrial Order, Schedule C at ¶¶ 13-14.

order, amendments 1-16, and Ford's April 5, 1989, letter.[8]   See Pretrial Order, Schedule C at ¶ 15.   On December 5, 1990, the Seattle Customs office reissued a CF 28 covering additional FN-36 entries filed in Seattle.  See id. at ¶ 16.  Ford responded to the reissued CF 28 on May 6, 1991, stating that "final audit results and price adjustments will soon be available."  Id. at ¶ 17.

Customs was investigating OAC's import practices in the late 1980s.  See Customs' App., Ex. 6 at 9; Ford's Resp. at 10.  As an outgrowth of the OAC investigation, Customs also began investigating Ford.  See Customs' Mot. at 12; Ford's Resp. at 10. On June 7, 1991, Special Agent in Charge Richard J. Hoglund issued Ford a summons, served by Special Agent ("SA") Michael Turner, demanding production of documents related to the FN-36 program. See Pretrial Order, Schedule C at ¶ 19; Customs' App., Ex. 12 at 40-41.

On August 6, 1991, Ford submitted a supplemental response to its November 20, 1989, response to Detroit's CF 28.[9]  See Pretrial Order, Schedule C at ¶ 20.  The supplemental response identified twelve entries of FN-36 merchandise that Ford estimated it owed

---

[8]     The April 5, 1989 letter included a tender of $948,230.45 for certain research and development, tooling, and assists for the FN-36 program.  See Pretrial Order, Schedule C at ¶ 15.

[9]     Ford refers to the supplemental response as a reconciliation resulting from price negotiations with Ogihara after FN-36 imports were completed.  See Ford's Resp. at 6.

$684,417 in unpaid duties and offered to tender the duty upon Customs' review.  See id. at ¶ 21.  After review, Customs concluded that Ford undervalued the FN-36 entries by $16,816,296, thus owing $689,775 in unpaid duties.  See id. at ¶ 22.  On November 22, 1991, Ford tendered a check for $689,775 in unpaid duties.  See id.

Customs exhausted its administrative procedures, initiated on January 10, 1995, by issuing pre-penalty and penalty notices and permitting Ford to file petitions in response.  See Pretrial Order, Schedule C at ¶ 23; Customs' Mot. at 6.  Customs then filed this civil action on January 24, 2002.  See Complaint.

## II.  Statutory Background

Title 19 of the United States Code, section 1592(a)(1) prohibits fraudulent, grossly negligent, or negligent "material and false" acts or omissions in connection with the entry of merchandise into the United States.  The penalties for a violation of 19 U.S.C. § 1592(a) are substantially less if the alleged violator makes a prior disclosure.  See 19 U.S.C. § 1592(c)(4).  A prior disclosure is a disclosure of "the circumstances of a violation" before, "or without knowledge of, the commencement of a formal investigation of such violation."  Id.  An alleged violator has the burden of proof of establishing a lack of knowledge of the commencement of a formal investigation.  See id.  Furthermore, a

person is presumed to have such knowledge if an investigating agent, who identifies himself and the nature of his inquiry, inquires about or requests specific records concerning "the type of or circumstances of the disclosed violation."  19 C.F.R. § 162.74(f)(2)&(3) (1991).  The presumption is rebuttable with evidence that the person did not know an investigation had commenced with respect to the disclosed information. See 19 C.F.R. § 162.74(f).  A formal investigation is considered to be commenced on the earliest of the following: (1) the date recorded in writing in the investigatory record when an investigating agent believed the possibility of a violation existed; (2) the date an investigating agent, after identifying himself and the nature of his inquiry: (a) inquired about the type of or circumstances of the disclosed violation, or (b) requested specific books and records relating to the disclosed information.  See 19 C.F.R. § 162.74(d)(4).  Further, a prior disclosure is made if it is disclosed "in writing to a district director" and "makes a tender of any actual loss of duties. . . ."  19 C.F.R. § 162.74(a).

## III.  Further Findings of Fact are Required to Determine When Customs Commenced its Formal Investigation

Customs states that its investigation commenced, and that Ford knew it was being investigated no later than October 18, 1990. See Customs' Mot. at 14 and 19.  On this date, Customs requested the

production of FN-36 entry records during a meeting. See id. This meeting was documented in an OAC Report of Investigation ("ROI") dated January 7, 1991. See id. at 17. That documentation is valid, Customs argues, because the regulations do not require a separate file to record the opening of an investigation. See id. at 13. In the alternative, Customs argues that Ford's formal investigation commenced no later than January 7, 1991, when SA Turner's suspicions of a violation by Ford were recorded in the OAC ROI. See id. at 18-19. Customs also states that, even if Ford could establish that an alleged disclosure occurred prior to, or without the knowledge of a formal investigation, the alleged disclosure still fails to satisfy the controlling regulations. See id. at 10.

Ford, in response, argues that Customs did not commence its investigation until August 21, 1991. See Ford's Resp. at 30. In support, Ford argues that this is the only date when the office of investigations began taking steps it ordinarily takes when commencing an investigation, particularly when verifying a prior disclosure claim. See id. Such steps included opening a file, sending notice to auditors and import specialists, requesting liquidation of entries to be delayed, and requesting entries be sent to the agent in charge. See id.

Under 19 U.S.C. § 1592(c)(4) and 19 C.F.R. § 162.74(a), a

valid prior disclosure must be made before, or without knowledge of, the commencement of a formal investigation.  Based on the parties' contentions stated above, a dispute exists to when Customs commenced a formal investigation of Ford.  Additionally, during the October 18, 1990, meeting, Customs states SA Turner asked Mr. Gibson, of Ford, about an entry related to the FN-36 program.  See Customs' Mot. at 17.  Ford states that the meeting occurred on November 27, 1990, but agrees that SA Turner and Mr. Gibson met and an entry related to FN-36 was inquired about.  See Ford's Resp. at 31; Customs' App., Ex. 8 at 27.  The parties only agree that a meeting occurred.  Ford claims that it understood the inquiry made at the meeting to be a part of Customs' investigation of OAC and not a part of an investigation of Ford itself.  See Ford's Resp. at 32-33.  Customs states that Ford is presumed to have known of the investigation as a matter of law under 19 C.F.R. § 162.74(f) because Customs "inquired about a particular entry of FN-36 merchandise, sought information concerning all other FN-36 entries filed by Ford, and/or requested specific books and records from Ford related to the FN-36 project."  Customs' Mot. at 19.  In viewing the evidence in favor of the non-movant, the Court does not agree that the meeting clearly constitutes the commencement of a formal investigation of Ford.  For Ford to presumably know of the investigation under 19 C.F.R. § 162.74(f), the investigating agent has to identify himself and the nature of his inquiry.  The parties

dispute whether the meeting and subsequent request for Ford's records was part of Customs' continuing investigation of OAC or was part of a separate investigation of Ford.

The OAC ROI, dated January 7, 1991, documents the October 18, 1990/November 27, 1990, meeting.  See Customs' Mot. at 17.  The ROI states that:

> On October 18, 1990, I [SA Turner] met with Ford attorney C. Harry Gibson, and advised him that Customs would ask to review Ford's records related to payment for and receipt of the presses purchased from OIW and OAC for the FN-36 Lincoln Town Car Project.  Gibson advised that Ford would compile the requested information.

See Customs' App., Ex. 6 at 14.  The ROI, on its face, does not mention the possibility or suspicion that Ford violated 19 U.S.C. § 1592.  Again, viewing the present evidence in a light favorable to the non-movant, the ROI could reasonably indicate that Customs was merely requesting Ford's participation in the OAC investigation.  Because issues of material fact exist as to when Customs commenced its formal investigation of Ford, summary judgement fails and therefore is denied.

## IV.  Ford's Counterclaim is Proper

Customs moves to dismiss Ford's refund counterclaim seeking $689,775 plus lawful interest for duties tendered on November 22, 1991, resulting from an undervaluation of the FN-36 project.  See Customs' Mot. at 1; Answer at ¶ 42.  Ford's counterclaim states

that the Complaint Entries were appraised based on the transaction value of the imported merchandise, which was equal to the prices stated on the invoices presented at the time of entry. See Answer at ¶¶ 36-42.  Therefore, Ford argues that it is entitled to a refund for overpaid duties. See Ford's Resp. at 37.  Customs asserts that Ford's counterclaim fails to identify any statutory or regulatory basis for obtaining a refund. See Customs' Mot. at 24. Under USCIT Rules 8(a) and 13, however, Ford is not required to identify such a basis for its counterclaim.  Ford's counterclaim is a short and plain statement properly limited to the value of the Complaint Entries, which is a direct challenge to Customs' case. Accordingly, Ford's counterclaim falls within the Court's subject matter jurisdiction thereby satisfying USCIT R. 8.  Furthermore, a counterclaim "may or may not diminish or defeat the recovery sought by the opposing party."  USCIT R. 13(b).  The Court finds that Ford's counterclaim meets the requirements of this Court's rules. Therefore, Customs' motion to dismiss Ford's counterclaim is denied.

## CONCLUSION

In conclusion, a factual dispute exists as to when Customs commenced its formal investigation of Ford.  Factual issues also exist as to when Ford knew it was being investigated about the Complaint Entries.  Additionally, Ford has properly pleaded its

counterclaim. Upon consideration of Customs' motion for summary judgment on the prior disclosure and statute of limitations defenses and to dismiss counterclaim, all pleadings and papers filed herein, and oral arguments, it is hereby

**ORDERED** that the statute of limitations defense has been waived and is thus moot; and it is further

**ORDERED** that the Customs' motion for summary judgment on the prior disclosure defense is denied; and it is further

**ORDERED** that the Customs' motion to dismiss Ford's refund counterclaim is denied; and it is further

**ORDERED** that the parties prepare for trial on the merits.

/s/ Nicholas Tsoucalas
**NICHOLAS TSOUCALAS**
**SENIOR JUDGE**

Dated: February 18, 2005
　　　New York, New York